THE STATE OF OHIO, APPELLEE, *v.* MULLINS, APPELLANT.

(No. 48-CA-85—Decided July 14, 1986.)

*David L. Landefeld,* prosecuting attorney, for appellee.

*H. Ritchey Hollenbaugh,* for appellant.

PUTMAN, P.J. This is an appeal from a sentence in a criminal case. Defendant-appellant, Randy E. Mullins, was indicted and convicted of two counts of aggravated robbery with firearm specifications, in violation of R.C. 2911.01, 2941.141, and 2929.71. On September 19, 1985, the trial court sentenced appellant as follows: Ten to twenty-five years' imprisonment on the two counts of aggravated robbery, to be served concurrently with each other, and two three-year terms of actual incarceration for the firearm specifications, to be served consecutively with each other and with the concurrent terms for aggravated robbery. The trial court's entry of sentence was filed on September 23, 1985. Trial counsel filed a notice of appeal on October 3, 1985 and filed a brief on appellant's behalf as appointed counsel. Present counsel entered his appearance in the court of appeals on February 25, 1986 and obtained leave to file his brief on or before March 20, 1986.

The second brief duplicates all assigned errors of the first except for the fourth assigned error relative to equal protection and impermissible discrimination based upon a more severe penalty being imposed upon the aider and abettor than upon the actual perpetrator who turned state's evidence. Absent discrimination based upon race, religion, national origin, illegitimacy, etc., this assignment of error is without merit and is overruled.

Nine other errors are assigned as follows:

"I. The trial court erred to the prejudice of appellant in allowing the jury to hear evidence of the bad characters of appellant and Hastings.

"II. The trial court erred in allowing the state to present evidence from a police officer that the co-defendant Downs had given a pretrial statement consistent with his trial testimony, where Downs had not been im-

peached by prior consistent statements and where Downs' motive to fabricate existed at the time of the pretrial statement.

"III. The trial court erred in overruling appellant's motions for acquittal pursuant to Crim. R. 29 where there was no evidence that appellant knew that Hastings would use a gun to commit a theft offense.

"IV. The trial court erred in refusing to grant appellant's motions for acquittal under Rule 29 of the Ohio Rules of Criminal Procedure where the state failed to present sufficient evidence to corroborate accomplice testimony as required by R.C. 2923.03(D).

"V. The trial court erred in instructing the jury that they had to find another man guilty of the offense and in giving incomprehensible instructions on conspiracy and complicity.

"VI. The trial court erred in imposing sentence for two firearm specifications where there was no proof that the deadly weapon used to commit the aggravated robbery was 'capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.' R.C. 2923.11(B).

"VII. The trial court erred in imposing two three-year terms of actual incarceration where the underlying felonies were committed as part of the same transaction.

"VIII. The trial court erred in finding appellant guilty of the firearm specifications in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Section 9 of the Ohio Constitution.

"IX. Appellant was deprived of the effective assistance of counsel by the acts and omissions of trial counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

In connection therewith, appellant poses the following issues presented for review.

1. Did the trial court err in admitting evidence of appellant's bad character?

2. Did the trial court err in allowing the prior consistent statements of a witness into evidence?

3. Was there sufficient evidence that appellant knew that a gun would be used to commit the offenses?

4. Was there sufficient corroboration of accomplice testimony to allow appellant's conviction?

5. Did the trial court err in instructing the jury with regard to the principal offender and accomplice liability?

6. Did the trial court err in imposing sentence for the firearm specifications where there was no proof of operability?

7. Did the trial court err in sentencing appellant for two firearm specifications arising out of the same transaction?

8. Did the firearm specifications constitute cruel and unusual punishment?

9. Was appellant denied the effective assistance of counsel?

The appellant reviews the prosecution testimony as follows:

At about 9:30 a.m. on May 3, 1985, the Clearcreek Valley Bank in Stoutsville (Fairfield County), Ohio, eight miles from Circleville, was robbed by Alfred O. Hastings, who was armed with a gun and who obtained $1,000 in one dollar bills. Subsequent to the bank robbery, Alfred Hastings obtained a car at gunpoint from a mail carrier.

The primary controversy at trial was whether the state could prove that appellant, Randy E. Mullins, had any criminal involvement in these aggravated robberies. To establish appellant's guilt as an aider and abettor of Hastings, the state called Hastings' ad-

mitted accomplice, Randy Downs, who, in exchange for his testimony, pleaded guilty to aggravated robbery, and had been promised the state's recommendation of a sentence of nine to twenty-five years, which the state would also recommend be suspended. Downs expected to be placed on five years of probation after serving only ninety days in the county jail. Downs testified that he had known appellant for six or seven years, and that he met Alfred Hastings in 1985 through appellant. According to Downs, on April 18, 1985, Downs, Hastings, and appellant, in Downs' house at Circleville, decided to rob the Stoutsville Bank, and Downs went to check out the bank on April 19. Downs' role also included picking up Hastings in a rural area after the robbery. Hastings was to rob the bank and steal a getaway car from a bank employee. Appellant's role was to drop Hastings off in Stoutsville.

After Downs left on April 19 to check out the bank, he did not see Hastings and appellant again until two days before the robbery. The night before the robbery, May 2, appellant returned to Columbus and only Hastings spent the night at Downs' house. Also, according to Downs, appellant did not participate in any planning of the bank robbery on the days immediately prior to May 3. Downs testified that appellant came to Downs' home in the morning of May 3, and Downs, Hastings, and appellant discussed the robbery for five minutes. Appellant and Hastings left at about 9:00 a.m., and Downs was to leave fifteen minutes later. Downs went to the place where he was to meet Hastings after the robbery. Downs met Hastings there, as prearranged, and they abandoned the stolen car. Downs took Hastings back to Downs' house, where Downs placed the money in a lunch bucket and then buried the lunch bucket in his garden, and where Downs

burned the money bag, as well as Hastings' glove and hat, in a wood stove. Appellant arrived after the burial and burning. The three listened to a scanner that Hastings or appellant had brought. Eventually, several law enforcement personnel arrived at Downs' house. While Hastings hid in a crawl space, Downs told the police he had been mushroom hunting in the Stoutsville area.

The money from the bank robbery was to have been divided three ways, but it was not divided on May 3. During the evening after the robbery, Downs took Hastings to a home in Meigs County. Appellant was already at the Meigs County home when they arrived. Within the next week or so, Downs proceeded to use the one dollar bills from the bank robbery to buy cocaine. He resold the cocaine, making no profit. He was paid in twenty and one hundred dollar bills. Downs ultimately gave appellant $650 of the cocaine-deal money, allegedly for appellant's and Hastings' share of the bank robbery proceeds. Downs admitted that he and appellant had owed each other money in the past. Downs, who was not employed, kept more than one third of the $1,000. Hastings had wanted Downs to "launder" the bank robbery proceeds, while appellant had said nothing about it.

Downs had two prior convictions of domestic violence.

Attempting to corroborate appellant's participation in the bank robbery, the state called Agent Robert F. Mulry of the Federal Bureau of Investigation to discuss his investigation of the bank robbery. Mulry went to Downs' residence on May 3, 1985. Appellant was there, but Mulry did not talk to him. Detective Sergeant Ned K. Webb, of the Fairfield County Sheriff's office, testified concerning his investigation and the gathering of evidence, specifically a glove and a twenty dollar

bill. Sergeant Webb admitted that he personally had no evidence that connected the physical evidence to appellant. Lieutenant David L. Cogar of the Athens Police Department testified about recovering a Smith & Wesson nine millimeter automatic pistol from Alfred Hastings, but this was never connected to Mullins.

Randy Downs' wife, Sandy, testified that in April, appellant and Hastings had been in her home a week or ten days before April 21. Appellant also brought Hastings to her home a few days before the bank robbery, but appellant left before Hastings and her husband mentioned the bank. Mrs. Downs also testified that she had never seen Al Hastings with a gun in her house. She thought she might have seen him with a shoulder holster, but she may have dreamed it. In addition, she was at home when the three left together on the morning of May 3, but heard nothing about their plans for the robbery. Mrs. Downs had been convicted of grand theft by deception involving drugs.

Meigs County Sheriff Howard E. Frank testified that on the evening of May 3, 1985, at 11:05 p.m., he stopped a pickup truck leaving Rocky Merriman's residence. He did not remember the driver's name. During the stop, the road was blocked off, and appellant drove up in a red Honda automobile. The sheriff had no reason to believe that appellant had committed any offense.

Detective Sergeant J.D. Hackmann of the Fairfield County Sheriff's Department testified on direct examination that on May 3, 1985, he talked to appellant at Downs' residence, and appellant told him that he, appellant, had gone into Stoutsville to buy a bottle of pop that day. On cross-examination, Sergeant Hackmann admitted that Mullins had not really mentioned Stoutsville, but had merely said

he went "into town." Sergeant Hackmann also saw appellant at the county jail after his arrest, where appellant told him the indictment was all wrong. Appellant claimed that "it was all Downs and Hastings," and "he had never been in that town before that morning [when] [h]e stopped in there to get a bottle of pop on his way back from Columbus."

The defense called Alfred Hastings as a witness, but he refused to answer any questions, asserting his privilege against self-incrimination.

The defense also called appellant's girlfriend, Rose Ann Wolfe, who testified that appellant was with her the entire period of the three days preceding Friday, May 3, and the dates of April 16-18.

Based upon this evidence and the court's instructions, the jury returned verdicts of guilty on both counts, and this appeal followed.

The state in its brief indicates that it is in substantial agreement with the statement of facts as set forth by the appellant except that Randy Downs, who testified on behalf of the state of Ohio, had entered a plea to one count of aggravated robbery prior to his testimony. At the time of his testimony, he had not yet been sentenced, although he knew the state was recommending a suspended sentence with a condition of ninety days in the county jail and five years' probation. The sentencing judge, however, had made no promises to Randy Downs as to whether or not he would concur in the prosecution's recommendation.

Further, the state contends that Randy Downs testified that the appellant did participate in the planning of the bank robbery as early as April 19, 1985.

In addition, the state claims corroboration of the testimony of Randy Downs by Downs' ability to identify the Smith & Wesson nine millimeter

automatic pistol recovered from Alfred Hastings as the one he had shot on a previous occasion, and to identify a Realistic police scanner which was recovered from Rocky Merriman's residence in Meigs County.

Sergeant J.D. Hackmann of the Fairfield County Sheriff's Department testified that the appellant told him, after appellant's arrest, that "he had never been in that town before that morning [when] [h]e stopped in there to get a bottle of pop on his way back from Columbus."

We reverse. We sustain the fourth assigned error in the second brief. All others are overruled. Our reasons follow.

## I

We find no record objection to the trial court's allowing the jury to hear evidence of other crimes committed by the appellant and Alfred Hastings.

The appellant complains that the state introduced character evidence of both the appellant and Alfred Hastings in the trial against the appellant, contrary to Evid. R. 404(B), which provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

R.C. 2945.59 states that:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contempo-

raneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

The state responds that the evidence tending to show drug usage by the appellant is admissible for the purposes of showing the defendant's motive and intent, and also to show that this type of crime was a system used by the appellant and Alfred Hastings.

The appellant argues that the evidence that he is a drug user and dealer bears no relationship to any material issue at trial. The state claims that drug users typically need large sums of money in order to support their drug habits, arguing that evidence of motive is a relevant issue; thus, the evidence offered of other crimes committed by the appellant and Hastings is, accordingly, admissible.

We overrule the assigned error because it is indeed correct that there was no objection by counsel for the appellant at trial. See Evid. R. 103(A)(1) which provides:

"(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context; * * *."

## II

We find that the trial court properly allowed the state to present Randy Downs' prior consistent statement made to Pickaway County Detective Dale Parrish prior to the arrest of any suspect in this case.

Evid. R. 801(D)(1)(b) authorizes the admission of prior consistent

statements. It provides in pertinent part:

"(D) Statements which are not hearsay. A statement is not hearsay if:

"(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."

We find the evidence came in under that rule with an appropriate limiting instruction.

Based on Randy Downs' cross-examination and the direct and cross-examination of Detective Dale Parrish, we find that the ruling of the court permitting testimony of prior consistent statements was not an abuse of discretion. Randy Downs, in May when he spoke with Detective Parrish, told the same story as at trial and this was before the state's offer of leniency, the alleged motive for fabrication within the meaning of Evid. R. 801(D)(1)(b).

### III

In the form it is structured, the third assignment of error must be overruled. It is limited to the proof of appellant's knowledge solely as it impacts the firearm specification. The absence of the firearm specification would not justify a total acquittal. The necessity for corroboration is discussed under the fourth assignment.

The third assignment of error is overruled.

### IV

The issue in this case is whether there was any evidence to identify Mullins as a guilty actor except Randy Downs' testimony. Former R.C. 2923.03(D); *State* v. *Myers* (1978), 53 Ohio St. 2d 74, 75, 7 O.O. 3d 150, 151, 372 N.E. 2d 356, 357. The state points to the following evidence, claiming it is sufficient to corroborate Downs:

1. The testimony that related to Rocky Merriman's house in Meigs County;

2. The police scanner in the Downs' residence to which the three defendants were listening after the robbery;

3. The testimony of Sandy Downs;

4. The statement by defendant, Randy Mullins, to Sergeant J.D. Hackmann that he had been "into town" on May 3 to get a bottle of pop at the grocery store. There is a grocery store next door to the bank in Stoutsville;

5. The testimony that an individual reported seeing a truck that looked like Randy Downs' truck, in front of the bank;

6. The testimony of Sheriff Frank that on May 3 at 11:05 p.m., in Meigs County, he talked to someone who resembled the appellant and who had a social security number that "came back" to the appellant;

7. The telephone toll records corroborating the testimony of Randy Downs;

8. The testimony of FBI Agent Mulry that he saw appellant at Downs' house on May 3, the day of the robbery, after the robbery.

Ohio statutory law requires corroboration of the testimony of an accomplice by "other evidence." *State* v. *Vorys* (1978), 56 Ohio St. 2d 107, 112-113, 10 O.O. 3d 302, 305, 383 N.E. 2d 115, 118. In order for the prosecution to satisfy the corroboration requirement of former R.C. 2923.03(D), independent evidence supporting an accomplice's testimony must tend to connect the accused with the alleged crime in such a way as to identify the accused as a guilty actor. *State* v. *Pearson* (1980), 62 Ohio St. 2d 291, 295, 16 O.O. 3d 332, 334, 405 N.E. 2d 296, 299.

Applying the corroboration requirement to this case, where the only act is that of an aider and abettor, the corroboration required is of the act of aiding and abetting by driving Hastings to Stoutsville. No participation in the actual holdup itself was alleged and no other act of aiding was alleged. The problem for the prosecution is that all that this mass of evidence does is to corroborate Randy Downs' claim that the crime was committed by Downs in the manner that Downs claims and that Downs was a guilty direct participant. To use the words of the Ohio Supreme Court in *Pearson:*

"* * * At best, however, corroboration of an accomplice's testimony concerning the material circumstances of a crime, apart from the accused's connection therewith, demonstrates that the *accomplice* was connected with the crime. IT DOES LITTLE TO ALLAY ONE'S CONCERN THAT THE ACCOMPLICE IS BEING UNTRUTHFUL CONCERNING THE ACCUSED'S CONNECTION WITH THE CRIME, especially since the accused's connection therewith would ordinarily be the primary if not sole contested issue in such cases." (Emphasis *sic,* capitalization added and footnote omitted.) *Id.* at 294-295, 16 O.O. 3d at 334, 405 N.E. 2d at 299.

There is only corroborative evidence that tends to place Mullins (appellant) next door to the bank and also at Downs' house before and after the crime, but nothing to corroborate that he either assented to the conspiracy or drove Hastings in the car to the scene. Appellant's presence next door to the bank in Stoutsville does not identify him as driving Hastings to Stoutsville.

Both the letter and spirit of *State* v. *Myers, supra,* are that former R.C. 2923.03(D) was enacted to prohibit the arrested guilty perpetrator from bargaining for immunity by "giving the police" an innocent person not otherwise identifiable as a guilty actor. *Myers* reads in pertinent part:

"R.C. 2923.03(D) relates to 'complicity' and provides:

" 'No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence.'

"This statute was enacted after the decision in *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, in which paragraph three of the syllabus reads:

" 'A conviction may be based upon the uncorroborated testimony of an accomplice, except where otherwise specifically provided by statute.'

"The exception provided for by the statute changes the general rule recognized by this court in *State* v. *Flonnory, supra.* In this day of plea bargaining and immunized testimony, and under such a statute, it is vitally important that one implicating an accomplice do something more than point a finger. His testimony must be corroborated by some other fact, circumstance, or testimony which also points to the identity of the one he accuses as a guilty actor. The specific statutory language of R.C. 2923.03(D) is otherwise meaningless.

"Appellant's conviction and sentence must be set aside. Accordingly, the judgment of the Court of Appeals is reversed." (Footnote omitted.) *Id.* at 75-76, 7 O.O. 3d at 151, 372 N.E. 2d at 357-358.

Coincidentally, this writer was the author of *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 60 O.O. 2d 95, 285 N.E. 2d 726, and of the court of appeals opinion that was reversed in *State* v. *Myers, supra.* We held in *Myers* precisely the same thing that the state argues here.

As we see this case, the situation is precisely the same as in *State* v. *Myers.* (To the same effect, see the Cuyahoga

County Court of Appeals case of *State v. Johnson* [1980], 70 Ohio App. 2d 152, 24 O.O. 3d 201, 435 N.E. 2d 429.) The legislature did not change this statute for eight years; it lived with *State v. Myers, supra,* and now has repealed R.C. 2923.03(D) effective prospectively after September 17, 1986. (See H.B. No. 338, 141 Ohio Laws ____.) We are bound by our oaths to continue to enforce this statute until its repeal, and the legislature has known this. Obviously it has changed its mind. But in the interim, it has affirmed the Supreme Court's rule by delaying its repeal of former R.C. 2923.03(D) until this year. Stated otherwise, respect for law and order includes respecting this statute until the effective date of its repeal, September 17, 1986. The *ex post facto* prohibition of the United States Constitution precludes applying the repeal to the case at bar.

We take note of the further coincidence that the Ohio Supreme Court case of *State v. Vorys, supra,* deciding that a conviction may be based solely upon the testimony of *two* or more accomplices, also arose out of this county (Fairfield County).

Accordingly, the decision of the trial court to overrule defendant's motion for acquittal was contrary to present Ohio law under the circumstances. There simply is no evidence to corroborate Randy Downs' testimony that Mullins either agreed to the crime or did any act in furtherance thereof.

We have considered carefully whether the testimony of Sandy Downs, the wife of state's witness Randy Downs, incriminates Mullins. She testified that the three men, Downs, Hastings and Mullins, were together at her house in Circleville shortly before 9:00 a.m. on the morning of May 3, 1985, the day of the bank robbery. She denied seeing them leave her house. She stated that she *heard* them leave. She did not testify that Mullins drove off with any of the others. The bank teller-victim fixed the time of the robbery at 9:30 a.m.

The point is that there is no corroboration that Mullins drove off with Hastings or Downs. See the photocopied and attached affidavit of Hastings (Defendant's Exhibit 1)[1] stating that Mullins left in a separate car and had nothing to do with the planning or execution of the bank robbery; Defendant's Exhibit 1 was attached to the brief of the state of Ohio, filed June 5, 1986, in the Fairfield County Court of Appeals case of *State v. Hastings* (Aug. 4, 1986), No. 60-CA-85, unreported. It does not matter whether the affidavit was properly filed there. Its only use here is to illustrate the philosophical difference between leaving the house together and driving off together. It is not considered by us as proof of the truth of any matter contained therein.

We point out the significant tenth paragraph of that affidavit indicating Hastings' present willingness to testify. At the time of the oral argument of the instant appeal on June 10, 1985, we had not been made aware that the prosecution had five days earlier filed this affidavit for use against Hastings in his pending separate appeal. Likewise, we have not been informed of any proceedings calculated to put to rest this manifest loose cannon on the deck of justice.

We have not overlooked, but have carefully considered, that direct evidence is not required to satisfy the corroboration requirement. Circumstantial evidence would be quite sufficient, in our opinion, if it tended to identify Mullins as a guilty actor in driving Hastings to Stoutsville. See the footnote in *State v. Myers, supra,* at 75-76, 7 O.O. 3d at 151, 372 N.E. 2d at

---

[1] See Appendix at 203.

357-358, citing *Forbes* v. *State* (Tex. Crim. App. 1974), 513 S.W. 2d 72, 76, certiorari denied (1975), 420 U.S. 910:

" 'The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be "other evidence tending to connect the defendant with [the] offense committed." * * * Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply [*sic*] the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied.' " *Forbes, supra,* at 76, quoting from *Minor* v. *State* (1927), 108 Tex. Crim. Rep. 1, 9, 13-14, 299 S.W. 422, 427, 428-429 (on first rehearing).

However, to do so the totality of the circumstances must exclude every reasonable hypothesis of Mullins' innocence. *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897; *State* v. *Cousin* (1982), 5 Ohio App. 3d 32, 5 OBR 34, 449 N.E. 2d 32. This issue is of constitutional significance. See *United States* v. *Longoria* (C.A. 5, 1978), 569 F. 2d 422.

The mere presence and consent of the defendant are not sufficient to constitute him an aider and abettor in the commission of a crime. *Jones* v. *Commonwealth* (1967), 208 Va. 370, 373, 157 S.E. 2d 907, 909.

" 'In the absence of a conspiracy or some preceding connection with the transaction, one does not aid and abet if he merely sees a crime being committed. Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not * * * aiding or abetting * * *.' " (Citation omitted.) *Columbus* v. *Russell* (1973), 39 Ohio App. 2d 139, 140, 68 O.O. 2d 327, 316 N.E. 2d 897, 898.

In this case, the circumstantial evidence does not exclude the reasonable hypothesis that Hastings is telling the truth in his affidavit. Stated otherwise, the reasonable hypothesis is that Downs lied about Mullins to escape a ten-year sentence by, instead, serving only ninety days. This was the perceived evil that caused the legislature to enact the corroboration requirement in the first place and thereafter to live in peace with it for eight years since *State* v. *Myers, supra,* until its recent repeal effective September 17, 1986.

We sustain the fourth assignment of error.

## V

We overrule the fifth assignment of error because we find the trial court's instruction to the jury was actually beneficial rather than prejudicial to the appellant.

The appellant asserts that the instruction regarding the charge of aggravated robbery required the jury to make a finding of guilt of an individual not a party to the case. The court instructed the jury that in order to find the appellant guilty of aggravated robbery, the jury had to find that Alfred Hastings committed an aggravated robbery beyond a reasonable doubt on or about May 3, 1985.

We find no error in the instruction. *State* v. *Jacobozzi* (1983), 6 Ohio St. 3d 59, 62, 6 OBR 103, 106, 451 N.E. 2d 744, 747, states:

"* * * While a principal offender need not necessarily be convicted in order to sustain another's conviction as an aider and abettor, there still must be sufficient evidence that an offense occurred." (Citations omitted.)

The court charged the jury with respect to the appellant's status as an accomplice. The charge reads in part as follows:

"The State has provided evidence that Randy Mullins was an accomplice without [sic] Alfred Hastings in the aggravated robberies. Accomplices are liable to prosecution and punishment as principal offenders. In charging an accomplice, the accused may be charged specifically as an accomplice under § 2923.03 of the Ohio Revised Code, or as in this case, charged simply as a joint offender in the offense of aggravated robbery under § 2911.01 of the Ohio Revised Code. * * *

"It is unnecessary that the principal offender, Alfred Hastings, be convicted before an accomplice can be convicted. An offense must actually be committed, however, before a person may be convicted as an accomplice.

"Before you can find the defendant guilty of aggravated robbery as an accomplice, you must find beyond a reasonable doubt, that on or about the 3rd day of May, 1985, in * * * Fairfield County, Ohio, the defendant, Randy Mullins, knowingly aided or abetted another in committing the offense of Aggravated Robbery."

The fifth assignment of error is overruled.

## VI

We find sufficient evidence that the deadly weapon used to commit the aggravated robberies was "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. * * *" R.C. 2923.11(B).

James M. Lands, a rural mail carrier, employed at the Stoutsville Post Office, testified that on May 3, 1985, the gun that was used in the aggravated robbery concerning his automobile looked very similar to State's Exhibit 4, the Smith & Wesson nine millimeter automatic pistol. Further, Randy Downs testified that State's Exhibit 4 looked the same as the gun that Alfred Hastings always carried. Randy Downs also testified that he had seen at least several rounds from the gun Alfred Hastings always carried.

While Randy Downs did not testify that State's Exhibit 4 was the same gun used by Alfred Hastings on the day of the robbery, he was able to describe it with particularity, and this was corroborated by James M. Lands.

The sixth assignment of error is overruled.

## VII

Assuming *arguendo* that guilt had been established, we find that the trial court committed no error when it imposed two consecutive three-year terms of actual incarceration in this case.

As pointed out by the state in its brief, the robberies that occurred in this case did not develop from a single criminal adventure, and were not bound together by time and purpose directed toward a single objective. The plan in this case was for Hastings to rob the bank and obtain a getaway car from a bank employee. This plan with regard to the getaway car from a bank employee was unsuccessful, and Hastings modified the plan by going to a nearby post office where he robbed Lands of his vehicle.

The post office was in a different building than the bank and Lands was not present in the bank.

The seventh assignment of error is overruled.

## VIII

We overrule the eighth assignment of error upon the authority of *Missouri* v. *Hunter* (1983), 459 U.S. 359. There, the United States Supreme Court ruled on a Missouri statute that is similar in operation to the Ohio statute in question. The Supreme Court held in that case that the defendant's sentence for both armed criminal action and first degree robbery in a single trial did not violate the Double Jeopardy Clause. In that case, the court stated:

"* * * With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter, supra,* at 366.

The eighth assignment of error is overruled.

## IX

In the state of Ohio, a properly licensed attorney is presumed competent. *Vaughn* v. *Maxwell* (1965), 2 Ohio St. 2d 299, 31 O.O. 2d 567, 209 N.E. 2d 164. Nothing presented by the appellant rebuts this presumption.

For the foregoing reasons, the fourth assigned error in the second brief dated March 20, 1986 is sustained, all others are overruled. The judgment of the court of common pleas is reversed, and this cause is remanded to that court for further proceedings according to law not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

HOFFMAN and WISE, JJ., concur.

# APPENDIX

Defendants
Exhibit #1

### AFFIDAVIT

STATE OF OHIO

        SS

COUNTY OF ROSS

Alfred O. Hastings, being first duly sworn deposes and states as follows:

1. That on the 3rd day of May, I committed an armed robbery of the Clearcreek Valley Bank.

2. That on the morning of the robbery, I was taken to the town of Stoutsville, Ohio by Randy Downs and dropped off . That the plan was that I would take a car after the robbery, and Randy Downs was to pick me up at a pre-determined location after I had ditched the stolen car.

3. That on the night before the robbery, I stayed all night at the home of Randy Downs, along with his wife Sandy Downs and their child. There was no one else at the home.

4. That on the morning of the robbery, around eight o'clock, Randy Mullens came by the house where I was staying with Randy and Sandy Downs.

5. That at approximately 8:30 AM, Randy Downs and I left the house together going to Stoutsville. That Randy Mullens left at the same time, in a separate automobile and I do not know where he went at that time.

6. That prior to committing the robber, Randy Downs and I left his home for the specific purpose of checking out the bank, and that on one occasion prior to the time we checked out the bank together, that Randy Downs checked the bank for the specific purpose of facilitating the robbery that he and I planned.

7. That the idea of robbing the bank was conceived by Randy Downs and his wife Sandy Downs, both of whom stated they knew persons who had robbed the bank previously, and that it was an easy mark.

8. That Randy Mullens had absolutely nothing to do with the bank robbery, that he did not provide any transportation to or from the bank, and he did not participate in the robbery.

9. That it was my intent to testify to the above in the trial of this case, however, my counsel advised me not to testify, and upon arrival at the court house, he convinced me that for my own good, I should not testify.

10. That I am willing to testify in any proceeding regarding the matter of the participation of Randy Mullens in the events of the 3rd of May.

_Alfred O. Hastings_
Alfred O. Hastings

On this 13th day of January, 1986, Alfred O. Hastings personally appeared and after having the oath administered to him, swore that the above statements were all true and nothing but the truth. This date above, this statement was sworn to and subscribed in my presence.

_Fred C. Pixler_
Notary Public- State of Ohio