OPINION
Defendant-appellant Anthony Ramsey appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On July 15, 1999, the Richland County Grand Jury indicted appellant on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree. At his arraignment on July 27, 1999, appellant entered a plea of not guilty to the charge contained in the indictment. A written waiver of statutory speedy trial rights that was signed by appellant was filed on August 10, 1999. Thereafter, a jury trial commenced on January 6, 2000. The following evidence was adduced at trial. On June 18, 1999, Karen Smith, who was nine years old at the time, went to Liberty Pool with her then ten year old brother, Weston Frazier. Liberty Pool is a city pool located in Mansfield, Ohio. While Karen Smith and her brother were sitting on the side of the pool waiting for the whistle to blow signifying the end of the adult swim, a man whom they did not know came over to talk to them. At trial, Smith identified that man as appellant. After the whistle blew, Karen Smith, her brother and appellant, who was then 21 years old, entered the pool and began playing Marco Polo, a game of tag. Karen Smith testified that during the game, appellant picked her up by placing his hand under her armpits and threw her into the pool. Karen Smith further testified that, while doing so, appellant placed his hands over her breasts once. Smith then went over to the side of the pool and sat down to catch her breath. According to Smith, appellant next sat behind her and "wrapped his legs" around her while holding her close to his body. Transcript of Proceedings at 110. Smith's back was against appellant. Smith, who told appellant to stop, managed to squirm and get away from appellant after he wouldn't let her go. At trial, Smith testified that she did not enjoy it when appellant placed his hands over her breasts and that it was a "bad touch." Transcript of Proceedings at 147. She also testified that she was scared when appellant wrapped his legs around her and held her close to his body. At trial, Weston Frazier, appellant's brother, corroborated her testimony. Officer Rashad Pitts of the Mansfield City Park Police Department also testified at appellant's trial. On June 18, 1999, Officer Pitts was working at Liberty Pool when he observed appellant dunking Karen Smith in the pool. Officer Pitts testified as follows in recounting the events of such date: When I first saw him [appellant], he was dunking her. But after about the second time he dunked her, I kind of got suspicious, because he had his hands on her chest. When he would do it, he would, like, play it off like he was, you know, fondling her breasts. Then he would dunk her again and she'd start wiggling, like, get off me, get off me. He kind of slowly bear hugged her down and he slowly put her down and he had her stomach, like, and she was, like, get off me. He was just sitting there. Then he sat down in the pool and he had her on his lap. She kept saying, Get off me. And then he went — — he started holding her hips and he was, like, massaging her hips, just rubbing them. She was, like, wiggling, saying, Stop, stop. Then he just sitting there and he wrapped his legs around her and she kept saying stop. Finally she got away. When she got away, she splashed him.
Transcript of Proceedings at 240-241. According to Officer Pitts, appellant was "getting sexual gratification" from his interaction with Karen Smith. Transcript of Proceedings at 244-245. Officer Pitts further testified that he observed appellant rubbing Karen Smith's body, namely, her buttocks, against appellants' penis and "grinding her" like he was sexually aroused. Transcript of Proceedings at 278. At the conclusion of the evidence and the end of deliberations, the jury, on January 10, 2000, returned with a verdict finding appellant guilty of gross sexual imposition in violation of R.C. 2907.05. Thereafter, as memorialized in a Sentencing Entry filed on January 11, 2000, appellant was sentenced to prison for a term of four years. The trial court ordered that appellant's sentence be served consecutive to appellant's sentence in Ashland County Common Pleas Case No. 99-CRI-07832. Pursuant to a Sentencing Addendum filed on January 14, 2000, the trial court adjudicated appellant a sexual predator pursuant to R.C. 2950.09(E). It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT IMPROPERLY ADMITTED HEARSAY IDENTIFICATION TESTIMONY, REQUIRING REVERSAL.
ASSIGNMENT OF ERROR II
 THE PROSECUTION IMPROPERLY CROSS-EXAMINED ITS OWN WITNESS, WESTON FRAZIER, WITH HIS PRIOR CONSISTENT STATEMENT, TO BOLSTER HIS TESTIMONY WHEN IN FACT THERE HAD BEEN NO ATTACK ON HIS TESTIMONY.
ASSIGNMENT OF ERROR III
 THE PROSECUTOR'S SUGGESTION THAT DEFENDANT HAD A PATTERN OF INTERACTING WITH CHILDREN IN A SEXUAL MANNER IMPROPERLY SUGGESTED PRIOR BAD ACTS, DEPRIVED HIM OF HIS FIFTH AMENDMENT RIGHTS, AND DEPRIVED APPELLANT OF A FAIR TRIAL.
ASSIGNMENT OF ERROR IV
 OFFICER RASHAD PITTS WAS IMPROPERLY PERMITTED TO TESTIFY THAT APPELLANT RECEIVED SEXUAL GRATIFICATION.
ASSIGNMENT OF ERROR V
 DEFENSE COUNSEL'S FAILURE TO OBJECT WHEN OFFICER RASHAD PITTS TESTIFIED THAT "HE WAS GETTING OFF ON IT" AMOUNTS TO INEFFECTIVE ASSISTANCE OF COUNSEL.
 I
Appellant, in his first assignment of error, argues that the trial court improperly admitted hearsay identification testimony and that such error requires reversal of appellant's conviction. Appellant specifically points to the following exchange that took place during Karen Smith's testimony at appellant's trial: Asst. Pros.: What did you tell your dad? Defense counsel: Objection. Hearsay. The Court: What she [Karen Smith] told her dad [on the day of the incident] is not hearsay.
Transcript of Proceedings at 115. After the trial court overruled the objection, Karen Smith testified that she had identified appellant to her father as the man at the pool shortly after the incident. According to appellant, "[t]he trial court was clearly erroneous as her [Karen Smith's] out-of-court identification to her father was clearly hearsay, elicited by the prosecutor for the purpose of identifying the appellant." Appellant further maintains that identification was of crucial importance in the trial in this matter since "the only exhibit admitted into evidence was introduced to demonstrate that the appellant's appearance had changed drastically between the date of the incident and the date of trial." Between the date of the incident and the time of trial, appellant had shaved his goatee and cut his hair. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "declarant" is defined in Evid.R. 801(B) as a person who makes a statement. In order for a statement to constitute hearsay, it must be made by someone other than the testifying witness, and be repeated by the witness on the stand, and also must derive its primary value by demonstrating the truth of the matter asserted. State v. Durr (1991), 58 Ohio St.3d 86, 91. Since the statement in this case as to Karen Smith's out-of-court identification of appellant was made by Karen Smith herself, the testifying witness, such statement does not constitute hearsay. Moreover, even assuming, arguendo, that such statement was an improperly admitted hearsay statement, its admission was harmless error. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." At the trial in this matter, Karen Smith, when asked whether the man who grabbed her at the pool was in the courtroom, pointed to appellant. Clearly, the admission at trial of Karen Smith's statement that, when she was at the pool following the incident, she pointed appellant out to her father was harmless considering Smith's in-court identification of appellant. For the foregoing reasons, appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, contends that appellee improperly cross-examined Weston Frazier, its own witness, with his prior consistent statement. Such statement had been recorded by a police officer after the incident at the pool. Appellant specifically points to the following exchange that took place at trial when Weston Frazier was questioned by the Prosecutor during redirect examination:
Q. Do you remember every question he [the police officer] asked you? A. No. Q. Do you remember every answer you gave? A. No. Q. Okay. How long after this happened did he come and talk to you? A. Three months or — yeah, three months later. Q. Three months later. Was your memory better then or now? A. Then. Q. Then. Okay. Now, Mr. Winkfield [defense counsel] asked you a lot about the questions and I'm going to ask you, and I know you said you don't want to read it, but if I read the question, can you read your answer? A. Probably. Q. Okay. When he asked you, When he grabbed her from the back, did he touch anywhere in any — you know, when I talk about private areas? Can you read your answer? A. Yeah. Q. Was that your answer? A. (Nods head.) Q. When he asked you — MR. WINKFIELD: Your Honor, you told me I couldn't read it. Now she's reading it, and the yeah is to do you know what I mean about private areas. THE COURT: Yeah. She can ask about private areas. MS. ROTELL: Your Honor, he has now insinuated that the witness is fabricating a story, and I believe based on the rules of evidence I may introduce a prior consistent statement. THE COURT: Yes, you can. You can ask him if he knows about private areas, and that sort of thing, and what he saw.
Transcript of Proceedings at 191-193. The trial judge thus admitted Weston Frazier's recorded statement over appellant's objection . Evid.R. 801(D)(1)(b) deals with the admission of prior consistent statements by a witness in certain circumstances. Such rule reads, in relevant part, as follows: "(D) Statements which are not hearsay. A statement is not hearsay if: "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *."
Such rule permits the "rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story or falsified his testimony in response to improper motivation or influence,. . ." State v. Lopez (1993), 90 Ohio App.3d 566, 578, citing Motorists Mut. Ins Co. v. Vance (1985), 21 Ohio App.3d 205, 207. The trial court in this matter clearly admitted Weston Frazier's recorded statement under the belief that defense counsel had insinuated that Frazier's testimony was fabricated. Upon our review of the record, we find that the trial court did not abuse its discretion by permitting Frazier's prior consistent statement to be used to rehabilitate Frazier's testimony pursuant to Evid.R. 801(D)(1)(b). See State v. Mullins (1986),34 Ohio App.3d 192, 196-97. During his cross-examination of Weston Frazier, defense counsel clearly insinuated that Frazier was fabricating his testimony as is evidenced by the following excerpt from the cross-examination: Q. Do you remember the officer asking you if he wrapped his arms around you? A. He didn't ask me that question either. Q. Okay. I'm going to have you read something, okay? Can you read? If you can't read, it's okay. A. Not that good. Q. You don't want to read this, do you? A. No. Q. I don't blame you. I wouldn't want to read it either. So you really don't remember if he asked you that question or not, do you? A. He didn't ask me that question. Q. Didn't ask you that question. Now, you say he grabbed Karen from behind, right, from the back? A. Yeah. Q. And he threw her. Now, you never told the officer that came to your house that he threw her two times, did you? A. He didn't ask me that question. Q. Okay. And he didn't touch any of her private areas, did he? A. Yeah. Q. Didn't you tell him that you couldn't see if he did, but you didn't see him touch any of her private areas? A. (Nods head.) Q. You told him that, didn't you? A. No. He didn't even ask me that question, but I seen him touch her chest — — touching her chest. Q. He said — — did he ask you a question like did he touch any of her private areas that you could see? Do you remember him asking you that? A. No. Q. Do you remember saying no to that question? A. (Shakes head.)
Transcript of Proceedings at 186 — 187.
Moreover, even assuming that Weston Frazier's prior consistent statement does not fall within Evid.R. 801(D)(1)(b), given the overwhelming evidence of appellant's guilt based upon the testimony of Karen Smith, Weston Frazier and Officer Pitts, we conclude that the admission of the statement had no effect on the outcome of appellant's trial and was, therefore, harmless. Appellant's second assignment of error is, therefore, overruled.
 III
Appellant, in his third assignment of error, contends that the Prosecutor's suggestion during closing arguments that appellant had a pattern of interacting with children in an improper manner derived appellant of his Fifth Amendment rights and his right to a fair trial. We disagree. Appellant in the case sub judice, who has a prior record, exercised his Fifth Amendment rights and did not testify at trial. During closing arguments, the Prosecutor stated as follows: "He [appellant] was dunking Karen. At first, Karen, she was smiling. That's the defendant's MO. He interacts with children. They have fun with him"
Transcript of Proceedings at 354. After defense counsel's objection to the above statement was overruled by the trial court, the Prosecutor further commented as follows: "He gains the trust of the child. Then he moves in on his prey just as the defendant did on Karen."
Id. Once again, defense counsel objected, arguing that "the prosecutor's comment here is prejudicial and in this case it should be stricken and it suggests that's a modus operandi, and preying on children and this is what he does is a suggestion that's improper, not in evidence in this case." Transcript of Proceedings at 355. However, after the Prosecutor argued that she "never referred to any prior incident" with respect to appellant but merely "argued his interaction with Karen and Weston," the trial court overruled both appellant's objection and his request for a limiting instruction to the jury. Id. Appellant now maintains that the Prosecutor's statements during closing arguments constituted prosecutorial misconduct requiring reversal of appellant's conviction. The test for prosecutorial misconduct is whether the prosecutor's comments at trial were improper and, if so, whether such comments prejudicially affected the substantial rights of the defendant. State v. Lott (1991), 51 Ohio St.3d 160, 165, cert. den. 498 U.S. 1017. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. In State v. Smith (1984), 14 Ohio St.3d 13, the Ohio Supreme Court set out the following test to determine whether prejudicial error results from a prosecutor's remarks in his closing arguments: "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. United States v. Dorr, supra, at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger v. United States, supra, at 88. . . . .Moreover, the code [of Professional Responsibility] provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1),. . ." Id. at 14.
In State v. Landrum (1990), 53 Ohio St.3d 107, the Ohio Supreme Court discussed the basic principles permitted in closing argument: (1) attorneys must be given latitude during closing argument; and (2) an attorney's remarks during closing argument must be viewed in the context of the entire argument. The court, at 112, emphasized: ". . . Not every intemperate remark by counsel can be a basis for reversal. State v. Maurer (1984), 15 Ohio St.3d 239 . . . The touchstone of analysis '. . . is the fairness of the trial, not the culpability of the prosecutor. . . .' Smith v. Phillips (1982), 455 U.S. 209, 219. The Constitution does not guarantee an 'error free, perfect trial. . . .' United States v. Hasting (1983), 461 U.S. 499, 508." If the prosecution's argument is found to be improper, we must also consider whether such conduct has prejudicially affected substantial rights of the defendant. See United States v. Hasting (1983), 461 U.S. 499. To find the improper argument harmless, "[i]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty." Id. at 510 — 511. While appellee argues that it did not infer during closing argument that appellant previously had preyed on children other than Karen Smith, we do not concur. The clear implication from the Prosecutor's closing argument was that appellant had a pattern of engaging in the same type of behavior with other children as is involved in the case sub judice. There was absolutely no evidence in the record supporting the prosecutor's implication. However, even assuming that the Prosecutor's statement constituted error, we find that appellant was not prejudiced. While appellant argues that without this "testimony", the case against him was marginal at best, we do not agree. Rather, based on the testimony of Karen Smith, Weston Frazier and Officer Pitts, the evidence was overwhelming that appellant had committed the offense of gross sexual imposition with respect to Karen Smith. For such reason, we find that the Prosecutor's statement did not prejudicially affect the substantial rights of appellant since, even if such statement had not been made, it is clear beyond a reasonable doubt that the jury would have found appellant guilty of gross sexual imposition. Appellant's third assignment of error is therefore, overruled.
 IV
Appellant, in his fourth assignment of error, challenges the admission of Officer Pitt's testimony. Appellant specifically contends that Officer Pitts was improperly permitted to testify that appellant received sexual gratification. We, however, disagree. As is stated above, appellant was indicted for gross sexual imposition in violation of R.C. 2907.05(A)(4). Such section provides that no person shall have sexual contact with another who is less than thirteen years of age. "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including, without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." At the trial in this matter, Officer Pitts testified, over appellant's objection, that appellant was "getting sexual gratification" from his interaction with Karen Smith. Transcript of Proceedings at 244-245. Officer Pitts testified that he observed appellant fondling Karen Smith's breasts and holding her on his lap so that her buttocks touched appellant's penis. Appellant now argues that since there was no factual basis for Officer Pitts' testimony regarding sexual gratification and since Officer Pitts was not qualified as an expert in any field, appellant's objection to the admission of such testimony should have been sustained. Appellant further maintains that such testimony was inadmissible since Officer Pitts had no idea what appellant was thinking. Whether a touching was undertaken for the purpose of sexually arousing or gratifying a person "must be inferred from the type, nature, and circumstances surrounding the contact." State v. Mundy (1994), 99 Ohio App.3d 275, 289. The test is whether an ordinary prudent or reasonable person sitting as a juror would "perceive from the defendant's actions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire." Id. Clearly, based upon the above test, no expert testimony on human sexuality was required as to what constitutes sexual gratification. Officer Pitts, therefore, clearly was free to opine, based on his observations and personal experience, whether or not appellant received sexual gratification from the incident at the pool. Moreover, since the test is what an ordinary or prudent person would perceive, the fact that Officer Pitts did not know what appellant was thinking at the time of the incident is irrelevant. Furthermore, even assuming, arguendo, that the trial court erred in permitting Officer Pitts to testify that appellant received sexual gratification, we find that such error was harmless. Based on the testimony of Karen Smith and her brother, Weston Frazier, in addition to the rest of Officer Pitts' testimony, there was overwhelming evidence supporting appellant's conviction. We find, upon review of the evidence, that an ordinary prudent or reasonable person, based upon the surrounding facts and circumstances, would conclude that appellant's purpose or specific intention for interacting with Karen Smith was arousal or sexual gratification. Appellant's fourth assignment of error is, therefore, overruled.
 V
Appellant, in his fifth and final assignment of error, claims that defense counsel's failure to object when Officer Pitts testified that appellant "was getting off on it" amounts to ineffective assistance of counsel. During the direct examination of Officer Pitts, the Prosecutor asked the officer what appellant was doing with Karen Smith while holding her by her breast. In response, Officer Pitts testified as follows: "When he would dunk her, he would try to play off like he was dunking her, but I saw what it was. He was just playing with her breasts when he would dunk her and bring her back up and dunk her again. He would do like this. He was just getting off on it." Transcript of Proceedings at 243. Appellant now asserts that defense counsel's failure to object to the above testimony constituted ineffective assistance of counsel. We, however, disagree. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed.2d 180; Strickland v. Washington (1984), 466 U.S. 668, State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instance of alleged ineffectiveness of counsel raised by appellant in the instant case. Even assuming, arguendo, that counsel in the case sub judice fell below an objective standard of reasonable representation in failing to object to Officer Pitts' testimony that appellant was "getting off on it," we find that appellant is still not entitled to a reversal of his conviction since appellant has failed to show that he was prejudiced by counsel's ineffectiveness. Appellant has failed to show that there is a reasonable probability that but for counsel's errors, the result of his trial would have been different. At trial, Karen Smith, Weston Frazier and Officer Pitts all testified that appellant placed his hands over Smith's breasts and wrapped his legs around her. Officer Pitts, who was the only adult eyewitness, further testified that appellant received sexual gratification while holding Smith's body against his own and rubbing her buttocks against his penis. According to Officer Pitts, appellant was "grinding" Smith as if he was sexually aroused. Transcript of Proceedings at 278. In short, there was overwhelming evidence presented at trial that appellant had sexual contact with Karen Smith for the purpose of his own sexual arousal and/or gratification. Appellant's fifth assignment of error is, therefore, overruled.
The judgment of the Richland County Court of Common Pleas is affirmed.
By Edwards, J. Wise, P.J. and Milligan, V.J. concurs.