[Cite as *State v. Kemp*, 2015-Ohio-3623.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 14 COA 035 |
| TODD L. KEMP | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common Pleas, Case No. 14 CRI 101


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     September 3, 2015


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

CHRISTOPHER R. TUNNELL         CHRISTINA REIHELD
PROSECUTING ATTORNEY          Post Office Box 532
PAUL T. LANGE                         Danville, Ohio 43014
ASSISTANT PROSECUTOR
110 Cottage Street, 3rd Floor
Ashland, Ohio 44805

*Wise, J.*

{¶1}.  Appellant Todd Kemp appeals his conviction, in the Court of Common Pleas, Ashland County, on counts of complicity to burglary and complicity to theft. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}.  On the morning of October 21, 2013, Appellant Kemp and his wife, Sarah Christine, pulled into the driveway of the home of Joseph and Julia Brown near Perrysville, Ohio.  Although not part of the charges at issue herein, appellant was driving a stolen car. At the time, Joseph and Julia, both in their seventies, were out running errands, and no one else was staying in the house. Their route that morning required them to pass by their residence on the way from the post office to the doctor's office, causing them to observe a strange vehicle on their property. Joseph, who was driving, doubled back to the house and pulled in behind the car. Joseph soon noticed a female standing in the backyard, and a white male, about 5'-10" or 5'-11," who was standing at his rear patio door. The man stated he was trying to get directions to the Pleasant Hill Dam.

{¶3}.  Joseph gave him the requested directions and then watched as the couple drove away from the premises. Joseph and Julia then proceeded to their appointment; however, they subsequently noticed coins and items of jewelry were missing from their house. Appellant does not presently dispute that later that morning he dropped Sarah off at a VFW post close to the Brown residence and then picked her up again to go back to said residence. Appellant and Sarah were later arrested by Columbus police officers in their stolen vehicle after engaging in suspected drug transactions in the parking lot of

a gas station in Franklin County. A search of their Columbus hotel room revealed items missing from the Brown residence.

{¶4}. On June 26, 2014, the Ashland County Grand Jury indicted Appellant Kemp on charges of Complicity (Burglary), a felony of the second degree, Complicity (Burglary), a felony of the third degree, and Complicity (Theft from an Elderly Person), a felony of the fifth degree.

{¶5}. A jury trial began on September 2, 2014. On September 4, 2014, after hearing the evidence, the jury found appellant guilty of all three charges.

{¶6}. A sentencing hearing was held on October 27, 2014. On October 28, 2014, the trial court sentenced appellant to five years in prison for the first count of complicity to burglary (a felony of the second degree), thirty-six months in prison for the second count of complicity to burglary (a felony of the third degree), and to twelve months in prison for the count of complicity to theft from an elderly person (a felony of the fifth degree). The trial court ordered the three prison terms to be served concurrently, for an aggregate prison term of five years.

{¶7}. On November 4, 2014, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶8}. "I. [APPELLANT'S] CONVICTION FOR COMPLICITY TO BURGLARY, A FELONY OF THE SECOND DEGREE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶9}.  In his sole Assignment of Error, appellant contends his conviction for the first count of complicity to burglary is against the manifest weight of the evidence. We disagree.

{¶10}. Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also*, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

{¶11}. Appellant focuses solely on the manifest weight of the evidence regarding the first complicity to burglary count, a second degree felony. This count pertains to the first incident when Joseph and Julia Brown pulled into their driveway and observed two persons on their property, as opposed to later events when appellant helped Sarah return to the house after the Browns went on to their appointment.

{¶12}. R.C. 2911.12(A)(2) reads as follows: "No person, by force, stealth, or deception, shall *** [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal

offense." Furthermore, R.C. 2923.03(A)(2) reads as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall *** [a]id or abet another in committing the offense."

{¶13}. We have recognized that in order to support a conviction for complicity by aiding or abetting under R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Shrider*, 5th Dist. Licking No. 07 CA 111, 2008-Ohio-3648, ¶ 41, citing *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Such intent may be inferred from the circumstances surrounding the crime. *Id.* Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding or abetting. *State v. Mullins* (1986), 34 Ohio App.3d 192, 200, 517 N.E.2d 945, citing *Columbus v. Russell* (1973), 39 Ohio App.2d 139, 140, 316 N.E.2d 897. However, Ohio law recognizes that circumstantial evidence is sufficient to prove the essential elements in a criminal case. *State v. Willey*, 5th Dist. Guernsey No. 98 CA 6, 1999 WL 3962, citing *State v. Hopfer* (1996), 112 Ohio App.3d 521, 558, 679 N.E.2d 321. "The only notable exception to this principle is where the inference between the facts proven and the facts sought to be proven is so attenuated that no reasonable mind could find proof beyond a reasonable doubt." *Id.,* citing *State v. Griffin* (1979), 13 Ohio App.3d 376, 377-378, 469 N.E.2d 1329.

{¶14}. According to the record in the case sub judice, the State first called one of the victims, Joseph Brown. Although appellant later claimed at trial that his purpose in

making the first stop at the Brown residence was to ask for some free gasoline (thus allowing appellant and Christine to keep more cash for future heroin purchases), Joseph made no mention in his testimony of such a request for gasoline, only that the man he spoke with asked for directions. Joseph noted that his house has an attached garage, but that on the day in question, the man door into the rear of the garage and the man door between the house and garage were both left unlocked. *See* Tr. I at 126-127.

{¶15}. In addition to several Columbus-area law enforcement officials and a detective from the Ashland City Police Department, the State called Detective David Rohn of the Ashland County Sheriff's Department. Rohn conducted two interviews with appellant. As to the first interview, Rohn testified that appellant told him he had a "two-gram-a-day" heroin habit, which would cost someone about $6,000.00 per month to support. Tr. II at 44-45. Appellant also told Rohn that he had been unemployed for six months, and that Sarah also had a heroin problem, although not as serious as appellant's. Tr. II at 45-46. Rohn also recalled that appellant never indicated he had asked Joseph for gasoline during the incident in question. Tr. II at 48. Rohn noted that in his experience, most prospective burglars will typically first knock on the door of a targeted house, and if someone does come to the door, they often will pretend to ask for directions. Tr. at 51.

{¶16}. During Rohn's second interview of appellant, certain inconsistencies arose. In particular, while appellant first denied that he or Sarah went inside the Brown residence, in the second interview, appellant stated that Sarah did go inside, and that he warned her when the Browns pulled into the driveway, i.e., that "[h]e went in the

garage, pounding on the door, yelling for Sarah to get out." Tr. II at 61. The direct examination of Rohn continued:

{¶17}. "Q.   So the Defendant telling you (sic) that he sees the Browns come home and he goes into the garage to warn Sarah Christine, what did he do then?

{¶18}. "A.  He said that he saw Sarah in the kitchen and yelled for her to get out.

{¶19}. "Q.  What did the Defendant do after he warned her?

{¶20}. "A.  Ran up and ran on the back deck and started knocking.

{¶21}. "Q.  What, if anything, did the Defendant tell you [about] how he was able to open the burgundy door?

{¶22}. "A.  It was slightly open.

{¶23}. "Q.   What did the Defendant tell you happened after he started being, knocking on the back sliding glass door?

{¶24}. "A.  Sarah came out and was standing there with them, and immediately, the elderly gentleman walked around.

{¶25}. "Q.  And what, if anything, did the Defendant tell you that he asked Mr. Brown?

{¶26}. "A.  Mr. Brown asked if he could help him with something, and he said, yeah, we are looking for directions to Pleasant Hill Dam.

{¶27}. "Q.  After the Defendant said that they asked for directions, what did he say that he and Sarah Christine did then?

{¶28}. "A.  Both went to the vehicle.

{¶29}. "Q.  And did the Browns go to the  - -  drive away at that point in time?

{¶30}. "A.  Yes."

{¶31}. Tr. II at 62-63.

{¶32}. The record reflects that appellant took the stand in his defense, essentially portraying the incident as an attempt to swindle someone for free gas, and blaming Sarah for thereafter escalating the events. He admitted to the jury that lack of heroin would cause him to suffer serious "dope sickness." Tr. II at 183-184. Appellant testified that he and Sarah pulled into the Brown residence because they saw a shed in the backyard with a door open revealing a mower, causing appellant to assume that someone was home who might have some gasoline. See Tr. II at 144-145. He stated Sarah got out to look for the homeowners to ask for gas, but when she did not return right away, he became concerned and went to look for her. Tr. II at 147. He claimed to have assumed the homeowners invited her into the house, and therefore he looked into the garage through a window to see if he could see her in the garage or house. Tr. II at 150. According to appellant, when he observed no cars in the garage, he realized nobody was home, and then began to panic when Joseph and Julia pulled in, as Sarah was not in sight and he had not expected her to go inside the house. Tr. II at 150, 165.[1]

{¶33}. Nonetheless, the evidence was clear that appellant and Sarah at the very least shared a common purpose - getting or preserving money for heroin - when they went to the home of Joseph and Julia Brown on October 21, 2013. We find the jurors could properly infer that appellant actively assisted Sarah in the commission of the first burglary by transporting her to that location, serving as a lookout and issuing a warning

---

[1]　It is noteworthy that during subsequent cross-examination by the prosecutor as to what happened after the first incident at the Brown residence, appellant's credibility was undermined when he admitted to the jury that he had lied on direct examination about not knowing of Sarah's intention to return to the house after he dropped her off at the nearby VFW property. See Tr. II at 191.

to her on the inside when the victims stopped by the house, and then quickly concocting a false request to Joseph for directions in order to deflate suspicion as to why they were in the back area of the house. Appellant then again transported Sarah to the nearby VFW, setting the stage for the next series of events at the Brown residence.

{¶34}. "Complicity or aiding and abetting may be established by overt acts of assistance such as driving a getaway car or serving as a lookout." *State v. Landingham*, 8th Dist. Cuyahoga No. 84715, 2005-Ohio-621, ¶ 14, citing *State v. Cartellone,* 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist. 1981). Upon review of the record in this case as summarized above, we find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's complicity to burglary conviction (first count) be reversed and a new trial ordered.

{¶35}. Appellant's sole Assignment of Error is overruled.

{¶36}. For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0811