THE STATE OF OHIO, APPELLEE, *v.* FLONNORY, APPELLANT.

125

(No. 72-8—Decided July 19, 1972.)

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Harvey R. Monck*, for appellee.
*Mr. William H. Bluth*, for appellant.

PUTMAN, J. The state of Ohio conceded in open court, and we find, that the death penalty in this cause must be vacated and the sentence reduced to life imprisonment because veniremen were improperly excused for cause when they expressed general opposition to capital punishment but did not unambiguously state that they would automatically vote against the death penalty irrespective of what the evidence might reveal. See *Witherspoon* v. *Illinois* (1968), 391 U. S. 510; *State* v. *Watson* (1971), 28 Ohio St.

2d 15; *State* v. *Anderson* (1972), 30 Ohio St. 2d 66. Moreover, the United States Supreme Court in *Furman* v. *Georgia* (decided June 29, 1972), 33 L. Ed. 2d 346, has held that the carrying out of the death penalty imposed at the discretion of the trier of the facts constitutes "cruel and unusual punishment" in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

That error was urged upon the Court of Appeals, but was not demonstrated by the record before that court. Later, this court ordered up additional portions of the *voir dire* examination which revealed fully the violation of the *Witherspoon* doctrine. This case was tried prior to *Witherspoon*.

We turn, therefore, to the other claimed errors.

I.

The appellant claims that evidence of his participation in two other armed robberies was improperly received.

R. C. 2945.59, reads:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, *any acts of the defendant which tend to show* his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." (Emphasis supplied.)

Much confusion about R. C. 2945.59 might be avoided if it were observed that nowhere therein do the words "like" or "similar" appear. The statute permits the showing of "other acts" when such other acts "tend to show" certain things. If such other acts do in fact "tend to show" any of those things they are admissible notwithstanding they may not be "like" or "similar" to the crime charged.

In this case, the chief prosecution witness was Brice Ogletree, who claimed to be an accomplice of the defend-

ant, Wayne Flonnory, and one William Brantley Bishop in the Jackson robbery-killing, the instant case, for which Flonnory was being separately tried upon a joint indictment charging all three. Ogletree testified that Flonnory was the actual triggerman.

During the course of the trial, under circumstances which will be hereinafter discussed, the jury heard testimony that the same three men had participated in two other armed robberies in which Flonnory was alleged to be the gunman—one on March 6, 1967, two days after the crime on trial, in which a Mr. Adelman was killed in the robbery of Levit's Super Market on East 115 Street in Cleveland; the other on January 31, 1967, approximately two months earlier, which involved robbery of a liquor store at 105th and St. Clair in Cleveland.

The fact that defendant Flonnory had participated in the Adelman killing and claimed that Ogletree was the actual killer in that subsequent crime was first brought to the attention of the jury in the text of a defense question put to Ogletree upon cross-examination by Flonnory's defense counsel as part of the defense trial strategy to show the despicable character of the state's claimed-accomplice witness, Ogletree.

When thereafter, on redirect examination, the state brought out more details of the Adelman crime, Flonnory's counsel—both with decades of demonstrated competence in jury trials of criminal cases—pursued their strategy by making no objections. Nor did they assign error in the Court of Appeals to the "Adelman killing" evidence.

Objection was made, however, to evidence of the earlier liquor store robbery. We find much more involved in this other alleged act of Flonnory than the mere showing of another crime on his part. In robbing the liquor store, as in robbing the bus driver, the same three men acted in concert. In both, Flonnory held the gun indicating a position of leadership. In both instances the plan and method of execution was the same—the same three men acting in concert, with Flonnory holding the gun,

128

Under the second count of the indictment for robbery-murder (R. C. 2901.01), the state was required to show two different specific intents on the part of the defendant:

1. An intent to rob, and
2. An intent to kill.

Appellant's participation as gunman with the same two other men in each crime "tended to show" both intent to rob and intent to kill, and the absence of mistake or accident, even assuming, hypothetically (for we do not find), that the scheme, plan or system was in all other respects entirely different.

In addition to the improper use of the words "like" and "similar" in jury instructions in criminal cases, the search for the truth is further impeded by lack of precision in limiting instructions dealing with "other acts."

If the jury find from other evidence, admitted without limitation, that the defendant has performed the act or acts involved in the indictment on trial, they may then consider "other acts" which they find the defendant has committed—for the limited purpose or purposes for which they have been received. Such evidence does tend to prove an element of the crime charged, the element of intent in the instant case, and hence is used to show "guilt of the offense with which he is charged."

It is imperative to distinguish the separate concept of execution of the act involved in the indictment from the concept of guilt of the crime charged. Even though the accused did the act of killing involved in the indictment, that is not to be equated with "guilt of the crime charged." There are many degrees of homicide, and a killing may be noncriminal.

If such "other acts" tend to show the defendant's scheme, plan or system in such a way as to constitute substantial probative evidence that the accused did an act or acts involved in the crime charged, such evidence is to be received without limitation. If, however, the circumstances of such "other acts" do not tend to show that the accused did an act which is the basis of the indictment, but do tend

to show his motive, intent, absence of mistake or accident on his part in doing the act involved in the indictment, then the "other acts" are received for such limited purpose. However, it is error to tell the jury that such "limited purpose" evidence may not be considered by the jury "as proof of the guilt of the defendant of the offense charged."

Where the evidence is admitted without limitation, no limiting instruction is to be given.

Any instruction limiting evidence to the purposes enumerated in R. C. 2945.59, the "other acts" statute, when given, should never tell the jury that the evidence cannot be considered by them as evidence of the "guilt" of the accused of the crime with which he is charged, because only such evidence could qualify under the materiality requirement of that statute.

Where evidence has been admitted for a limited purpose which the state claims shows the defendant did certain "other acts" which show the motive or intent of the accused, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question which is alleged in the indictment, the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment.

In the case at bar, the "other acts" were offered for a limited purpose. A "limited purpose" instruction was given. No error in this instruction is claimed to be prejudicial to the appellant and we find none.

Additionally, we find that, upon this state of the record, where the jury had already heard the defense first introduce the evidence of Flonnory's participation in the robbery-murder two days later and heard without defense objection more details thereof from the state, the showing of another robbery two months earlier could not have been prejudicial. *State* v. *Laskey* (1970), 21 Ohio St. 2d 187, 192; *Chapman* v. *California* (1967), 386 U. S. 18.

## II.

Appellant claims that he is entitled to a new trial be-

cause, he alleges, Ogletree, who testified that he had not been promised anything in return for his testimony respecting the Jackson killing in the case at bar, later gave contrary testimony when he entered his guilty plea to the Adelman killing.

There are two reasons why this claim is without merit. First, it was never presented to the trial court by motion for new trial on the grounds of newly discovered evidence or otherwise. The so-called newly discovered evidence was improperly before the Court of Appeals as well as this court, it being in the form of a purported transcript of Ogletree's plea proceedings in the *Adelman* case, which occurred after the trial of the case at bar and which is merely attached to defendant-appellant's brief in the Court of Appeals.

Second, the text of Ogletree's statements at those subsequent plea proceedings in connection with another crime are not in fact what appellant's counsel claim them to be. The extra-judicial "transcript" shows, in substance, that Ogletree said his lawyers had promised him consideration for a life sentence in the Adelman killing in return for his plea of guilty to the Adelman killing. Whereupon the judge refused the plea and Ogletree stood trial for the Adelman killing.

There has never been brought to the attention of this court, improperly or otherwise, any statement of Ogletree which is in fact contrary to his testimony in the case at bar.

## III.

Finally, the appellant complains of a refusal of the trial judge to tell the jury there could be no legal conviction on the uncorroborated testimony of an accomplice.

This claim fails for four independent reasons.

1. In Ohio, there is no such rule, except where provided by statute (perjury, R. C. 2945.62; seduction, R. C. 2945.63; and treason, R. C. 2945.60 and 2945.61).

2. There was no request for such an instruction, hence no refusal; and there was no objection made to the court's

charge upon this point. This subject was never brought to the attention of the trial court.

3. The trial court, exercising its discretionary power, gave an extensive charge upon the subject of the testimony of claimed accomplices and cautioned the jury that such was to be "acted upon with the utmost caution." Such instruction is improper as constituting a comment upon the evidence.

4. The testimony of Ogletree was corroborated, as pointed out in the opinion of the Court of Appeals. A black bag and a money changer which Ogletree said were stolen from the bus driver were found where he said they were thrown away and were properly identified and received in evidence. The testimony of a Mrs. Robinson corroborated Ogletree's account of a visit shortly after the crime by Flonnory and Ogletree to an after-hours place where Flonnory displayed a bag containing a great amount of change, for which she gave him some currency for part and coin wrappers with which they wrapped the balance as she watched them. Mrs. Robinson testified further that she saw the defendant Flonnory at the police station later and spoke with him in the presence of a detective. She testified, "I asked him why did he do it and he said he did not know. I said, 'bad company?' And he said, 'I guess so.'"

Except as to the death sentence, the judgment of the Court of Appeals is affirmed. With regard to the death sentence, the judgment of the Court of Appeals must be modified and the sentence is reduced to life imprisonment, as prescribed in R. C. 2901.01.

*Judgment accordingly.*

O'NEILL, C. J., SCHNEIDER, CORRIGAN, STERN and LEACH, JJ., concur.

HERBERT, J., concurs in paragraphs two, three and four of the syllabus and in the judgment.

PUTMAN, J., of the Fifth Appellate District, sitting for BROWN, J.