[Cite as *State v. Wright*, 2011-Ohio-3575.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 93068

---

# STATE OF OHIO

### PLAINTIFF-APPELLEE

### vs.

# WESLEY WRIGHT

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## VACATED IN PART;
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-498291

**BEFORE:** Keough, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   July 21, 2011

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, OH 44113

Wesley Wright, pro se
Inmate No. 563-038
Mansfield Correctional Institution
P.O. Box 788
Mansfield, OH 44901

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By:   Scott Zarzycki
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Wesley Wright, appeals from the trial court's judgment, entered after a jury verdict, finding him guilty of rape and sexual contact with a minor and sentencing him to 25 years in prison. Finding merit to the appeal, we vacate in part and reverse and remand for a new trial.

## I. Facts and Procedural Background

{¶ 2} In July 2007, Wright was indicted for one count of rape, in violation of R.C. 2907.02(A)(1)(b), and four counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), that had allegedly occurred between May 29, 2002 and July 31, 2004. The court issued a capias and Wright was arrested on March 25, 2008.

{¶ 3} The court subsequently allowed Wright's first and second court-appointed lawyers to withdraw from the case; the court appointed a third attorney on November 24, 2008. A jury trial commenced on February 10, 2009.

{¶ 4} The victim, S.P., who was 19 years old at the time of trial, testified that she was born on May 29, 1989. She stated that she first met Wright when she was 12 years old and in the seventh grade, when her mother, Cynthia Jackson, began dating him. She recalled that she, her

mother, and her sister were living at the home of Jackson's foster parents at the time.

{¶ 5} S.P. testified that she and her family moved from place to place and lived with various people over the next several years, including a family friend named Laroy; Jackson's friend Miranda Graham; a shelter on the west side of Cleveland; S.P.'s aunt; a townhouse on the east side of Cleveland; and eventually, West Virginia.

{¶ 6} S.P. testified that as the family moved from place to place, Wright often stayed with them. S.P. stated that at first she thought of Wright as a friend, but their relationship eventually changed. She said that when she was "twelve going on thirteen," she "started liking him like emotionally" and that "he was like the first person I fell in love with."

{¶ 7} S.P. testified that she did not remember the exact date when she first had intercourse with Wright, but recalled that it occurred a month or two before her thirteenth birthday. She stated that she knew when it happened because she remembered her thirteenth birthday party and who was present. According to S.P., the party was given by a friend of her mother's and was a joint celebration of her birthday and another friend's birthday.

{¶ 8} S.P. stated that her first sexual encounter with Wright occurred while she and her family were living at Miranda Graham's apartment. She

said that on the day in question, she and her sister were in Wright's care while her mother was working. Wright drove them to his friend Elizabeth Burkhalter's one-bedroom apartment to use her computer; Elizabeth was not at home.

{¶ 9} S.P. testified that she went into the bedroom, where Wright was working on the computer, to lie down. Her sister stayed in the living room. Wright left the bedroom briefly; when he returned he began touching S.P. and removing her clothes. S.P. confirmed they had intercourse and testified that "then from there, we just started having sex almost every day."

{¶ 10} Elizabeth Burkhalter, who said she began dating Wright in April 2002, verified that Wright had access to her apartment and would come over during the day while she was at work. She recalled two different occasions when she came home and found Wright alone with S.P.; on one occasion she found them in her bedroom. She eventually told Wright to stop bringing S.P. to her apartment if no other children were present. Burkhalter testified that she learned of Wright's relationship with Jackson approximately a year after she started dating him.

{¶ 11} S.P. stated that she and Wright had intercourse at various locations over several years as the family moved from place to place. According to S.P., they had intercourse a few times at Elizabeth Burkhalter's apartment, frequently at Miranda Graham's apartment, twice at the home of

Wright's sister, and a few times at the family's townhouse. S.P. testified that her mother continued to date Wright during this time, so S.P. did not tell her or anyone else about her sexual relationship with Wright.

{¶ 12} In 2004, when S.P. was 15 years old, she and her family relocated to West Virginia to live with S.P.'s grandparents. Wright frequently traveled to West Virginia to visit. S.P. testified that she and Wright had intercourse during one of his visits, but after S.P. and her family moved to an apartment, she and Wright resumed having intercourse "all the time basically" while Jackson was at school or working. Their last sexual encounter occurred a few days before S.P.'s sixteenth birthday, just before S.P. moved to live with her father.

{¶ 13} S.P. testified that a short time later she learned she was pregnant and went to live with her uncle in Tennessee. S.P. told her mother, who had moved back to Cleveland, that the father was someone from Atlanta.

{¶ 14} S.P. gave birth to a son in November 2005. She returned to Cleveland in February 2006 to visit her mother, who had just given birth to a baby fathered by Wright. According to Cleveland police officer Richard Sanders, on February 6, 2006, Jackson, accompanied by S.P., reported that S.P. had been raped by Wright. Sanders's written narrative of the interview indicates that Jackson told him that she began dating Wright in February 2002.

{¶ 15} S.P. returned to Tennessee after making the police report. She subsequently spoke with authorities from Montgomery County Children's Services in Clarksville, Tennessee. In a videotaped interview, S.P. revealed that she believed Wright to be the father of her child. Detective Ginger Fitting testified that she collected DNA samples from S.P. and her baby and sent the samples to officials in Cleveland and West Virginia. Subsequent testing of the samples revealed a 99.99 percent possibility that Wright is the father of S.P.'s child.

{¶ 16} Jackson testified that she met Wright in late February or March, 2003 and began dating him two weeks later. She confirmed S.P.'s account of the family's many moves and stated that she did not learn that Wright was the father of S.P.'s child until 2007, shortly before S.P. moved back to Cleveland. Jackson testified that she confronted Wright, but he denied that he had fathered S.P.'s child.

{¶ 17} Jackson admitted that in April 2007, she spoke with Cuyahoga County Department of Children and Family Services ("CCDCFS") officials regarding a matter involving S.P.'s sister; however, she denied telling anyone at CCDCFS that Wright had admitted to a sexual relationship with S.P. and that he might have fathered S.P.'s child. She admitted, however, that she told CCDCFS personnel that Wright should not go to jail because S.P. "wanted it [i.e., intercourse]" and "had feelings" for him.

{¶ 18} Jackson admitted that Wright telephoned her repeatedly from March 25, 2008, after he was arrested, to July 14, 2008. Jackson said that most of the conversations were about their son, but admitted that she and Wright discussed the date when they met. Jackson testified that one of the conversations "might have" been a three-way conversation with her, Wright, and Burkhalter in which they discussed when they met, a date Jackson stated she knew was "important" to Wright's defense of the charges.

{¶ 19} Over defense counsel's objection, the prosecutor played an audio recording that contained excerpts of the phone conversations between Wright and Jackson. In one conversation, Wright discussed marrying Jackson when the case was over. In another, Wright suggested that Jackson and S.P. refuse to talk to the prosecutor and that S.P. should change her statement about what happened.

{¶ 20} No witnesses testified for the defense and the jury subsequently convicted Wright of all counts as indicted.

## II. Unlawful Sexual Conduct With a Minor

{¶ 21} R.C. 2907.04(A), regarding unlawful sexual conduct with a minor, states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age * * *."

{¶ 22} Under R.C. 2907.04(B)(3), unlawful sexual conduct with a minor is a fourth degree felony, but "if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree." If the offender is less than four years older than the other person, unlawful sexual conduct with a minor is a first degree misdemeanor.

{¶ 23} In addition to his rape conviction, Wright was convicted of four counts of unlawful sexual conduct with a minor, with a furthermore clause alleging that he was ten years older than S.P., which elevated the offenses to third degree felonies. In his first assignment of error, Wright contends that the State produced no evidence of his age at trial and no evidence demonstrating that he was ten years older than S.P. and, hence, because age is an element of the offense, there was insufficient evidence to support his convictions, requiring they be vacated. At the least, he argues, the matter should be remanded for resentencing on misdemeanors of the first degree.

{¶ 24} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471, 741 N.E.2d 594. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 25} We note at the outset that Wright raises this argument for the first time on appeal. Our review of the record demonstrates that he made no objection at trial to the sufficiency of the evidence regarding his age.[1] A failure to assert an alleged error in the trial court waives all but plain error. *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277; Crim.R. 52(B). Plain error exists "if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings." *State v. Rollins*, Clark App. No. 2005-CA-10, 2006-Ohio-5399. To prevail under the plain error standard, the substantial rights of the accused must be so adversely affected that the error undermines the fairness of the guilt determining process. *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, ¶25. We find such plain error here.

---

[1]Defense counsel moved for a judgment of acquittal under Crim.R. 29 at the close of the State's case. With respect to the rape charge, counsel argued that the evidence was insufficient to show that S.P. was under the age of 13. With respect to the charges of unlawful sexual conduct with a minor, counsel argued that the State had not presented sufficient evidence of the time and place where the alleged acts had occurred.

{¶ 26} When age is an essential element of an offense, it must be proved beyond a reasonable doubt. *State v. Price* (1992), 80 Ohio App.3d 35, 43, 608 N.E.2d 818. Age may be proved by circumstantial evidence, but the jury's observations of the defendant alone are not sufficient. Id.; *State v. Dula* (Jan. 27, 1999), Wayne App. No. 98CA0030; *State v. McNeese* (Oct. 23, 1995), Warren App. No. CA93-12-108.

{¶ 27} The State concedes that it presented no direct evidence of Wright's age at trial, but argues that the record reflects sufficient circumstantial evidence of his age to support his convictions beyond a reasonable doubt. It argues that the evidence showed that Wright was over age 18 at the time of the offense because there was testimony that S.P. met Wright in 2001 or 2002 when she was 11 or 12 years old, and testimony that around the same time, Wright "was old enough to go to a drinking establishment." The State further contends that Burkhalter's testimony that Wright had already fathered a child when she met him in 2002 established that Wright was ten years older than S.P. Finally, the State contends that the jury observed Wright, as well as Jackson and Burkhalter (the women he dated), during the trial and could have reasonably inferred that he was more than 18 years of age and at least ten years older than S.P. *Price*, supra.

{¶ 28} We are not persuaded. Jackson's testimony that she met Wright in a bar in 2003 does not demonstrate that Wright was 18 years of age or

older, or ten years older than S.P. Further, the fact that Wright had already fathered a child by 2002 proves nothing about Wright's age at the time and does not demonstrate that he was ten years older than S.P. Therefore, because there was no other evidence relating to Wright's age, any conclusions about his age based solely upon the jury's observations of him at trial would be insufficient to establish this element of the offense.

{¶ 29} Further, although not relevant to our finding regarding the sufficiency of the evidence and not raised as error by Wright, we are troubled by the jury instructions in this case. Despite the lack of any evidence whatsoever at trial regarding Wright's birthdate, the judge instructed the jury as follows regarding the counts of unlawful sexual conduct with a minor:

{¶ 30} "Before you can find the defendant guilty, you must find beyond a reasonable doubt that between May 29th of 2002 and July 31st of 2004, in Cuyahoga county, the defendant engaged in sexual conduct with [S.P.], not his spouse, and Wesley Wright being 18 years of age or older, to wit, *date of birth July 24th of 1972*, knowing that [S.P.] was 13 years of age or older, but less than 16 years of age, to wit, date of birth May 29th, 1989, or was reckless in that regard." Continuing, the judge then instructed the jury that "[f]urthermore, *Wesley Wright is ten or more years older than [S.P.]*." (Emphasis added.)

{¶ 31} Thus, the judge told the jury Wright's birthdate, even though there was no evidence whatsoever presented at trial as to his birthdate. The judge also told the jury that Wright was ten years older than S.P., a fact the jury was supposed to determine. That in itself is plain error.

{¶ 32} Appellant's first assignment of error is sustained. Even viewing the evidence in a light most favorable to the prosecution, it is apparent the State did not present sufficient evidence of Wright's age to sustain his convictions for unlawful sexual conduct with a minor. Because the evidence as to an element of the charges was insufficient, the judge should have dismissed the charges. See Crim.R. 29(A).

{¶ 33} Appellant's convictions for unlawful sexual conduct with a minor are therefore vacated.

### III. Rape

{¶ 34} Wright was convicted of rape, in violation of R.C. 2907.02(A)(1)(b), which states that "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age, whether or not the offender knows the age of the other person." In his second assignment of error, Wright contends that his rape conviction was against the manifest weight of the evidence because the evidence indicated that S.P. was over 13 years of age when she first had intercourse with him.

**{¶ 35}** In light of our holding that other acts testimony was improperly admitted, necessitating a new trial on Wright's rape conviction (see discussion below regarding Wright's fourth assignment of error), this assignment of error is moot and we need not address it. See App.R. 12(A)(1)(c).

## IV. Speedy Trial

**{¶ 36}** In his third assignment of error, Wright argues that the trial court erred in denying his motion to dismiss for violation of his right to a speedy trial.

**{¶ 37}** When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceed the time limits under R.C. 2945.71. *State v. Borrero*, Cuyahoga App. No. 82595, 2005-Ohio-4488, ¶10. Whether the trial court's ruling on the speedy trial question was correct is a mixed question of law and fact. Id. We "apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *State v. Barnes*, Cuyahoga App. No. 90847, 2008-Ohio-5472, ¶17. This court must construe the statutes strictly against the State when reviewing the legal issues in a speedy trial claim. *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 1991-Ohio-171, 661 N.E.2d 706. If the State has violated a

defendant's right to a speedy trial, then the court must dismiss the charges against the defendant.   R.C. 2945.73(B).

{¶ 38} R.C. 2945.71 requires the State to bring a felony defendant to trial within 270 days of arrest. Each day a defendant is held in jail in lieu of bond on a pending charge is counted as three days.   R.C. 2945.71(E).   The time constraints of R.C. 2945.71 may be extended for various reasons, including motions filed by the accused, continuances requested by the accused, the time required to secure counsel for the accused, and reasonable continuances granted other than upon the accused's motion.   R.C. 2945.72; see, also, *State v. Byrd*, Cuyahoga App. No. 91433, 2009-Ohio-3283 (a defendant's demand for discovery or bill of particulars tolls the speedy trial period for a "reasonable time"); *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283 (motions filed by the defendant toll the speedy trial period for a "reasonable period" to allow the State an opportunity to respond and the court an opportunity to rule); *State v. Pirkel*, Cuyahoga App. No. 93305, 2010-Ohio-1858 (sua sponte continuances by the court that are reasonable in necessity or purpose toll the speedy trial period).

{¶ 39} Wright was arrested on March 24, 2008 and held without bond until his trial commenced on February 10, 2009.   Applying the principles set forth above, we find no violation of his speedy trial rights.   The record

reflects that Wright's own actions repeatedly tolled the speedy trial date and he was brought to trial within the 270-day statutory limit.

{¶ 40} Wright was arrested on March 24, 2008 on this case and on a probation violation in Case No. CR-431916. On April 14, 2008, he was sentenced to six months incarceration on Case No. CR-431916. Accordingly, from the time of his arrest until October 14, 2008, the triple-count provisions of R.C. 2945.71 did not apply and time ran one for one.

{¶ 41} During this period of time, Wright filed numerous motions that tolled the time. In addition, Wright's first attorney withdrew, so the court appointed another lawyer for him. After October 14, 2008, the trial court continued trial until November 19, 2008 on its own motion because it was involved in another criminal trial. Wright then filed another series of motions, fired his second lawyer, and filed a grievance against the sitting judge. The case was transferred to another judge and a third lawyer was appointed for Wright. New counsel then filed more motions and requested more continuances in order to prepare for trial. Our calculations show that construing the tolling provisions strictly against the State, and accounting for several periods when the triple-count provision applied, at most only 132 days of the 270-day statutory limit had been exhausted by trial. Accordingly, the trial court properly denied Wright's motion to dismiss the indictment based on speedy trial grounds.

**{¶ 42}** Wright's third assignment of error is therefore overruled.

## V. Other Acts Evidence

**{¶ 43}** As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial, is inadmissible. *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 314, 415 N.E.2d 261. Evid.R. 404(B) and R.C. 2945.59 provide exceptions to this rule.

**{¶ 44}** Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶ 45}** Similarly, R.C. 2945.59 provides: "In any criminal case in which * * * the defendant's scheme, plan or system in doing an act is material, any acts of the defendant which tend to show * * * the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." Such evidence is never admissible, however, when its sole purpose is to establish that the defendant committed the act alleged of him in the indictment. *State v. Flonnory* (1972), 31 Ohio St.2d 124, 285 N.E.2d 726, superseded by statute on other grounds, as stated in *State v. Hill* (Apr. 3,

1980), Cuyahoga App. No. 40429; *State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623.

{¶ 46} In his fourth assignment of error, Wright contends that the trial court erred in admitting other acts evidence. Specifically, he complains that the trial court erred in allowing evidence of events that occurred in West Virginia and Tennessee, including evidence of S.P.'s continued sexual relationship with Wright, her pregnancy, the birth of her child, and DNA testing confirming a 99.99 percent probability that Wright is the child's father. Wright contends that these events occurred outside the time frame of the charges, as well as outside the jurisdiction of the court. He further contends the evidence was not relevant and highly inflammatory.

{¶ 47} The State argues that this evidence shows Wright's "common scheme by continuing to have sex with the victim even when she moved out of the state." It contends that the events in West Virginia and Tennessee are "inextricably related" to the offenses charged because they are an "immediate continuation" of Wright's conduct in Cleveland. The State argues further that the out-of-state encounters between S.P. and Wright and the DNA evidence demonstrate Wright's identity as the perpetrator.

{¶ 48} The Ohio Supreme Court has explained that "'[s]cheme, plan or system' evidence is relevant in two general factual situations. First, those situations in which the 'other acts' form part of the immediate background of

the alleged act which forms the foundation of the crime charged in the indictment.  In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts.  To be admissible pursuant to this sub-category of 'scheme, plan or system' evidence, the 'other acts' testimony must concern events [that] are inextricably related to the alleged criminal act.

{¶ 49} "Identity of the perpetrator of a crime is the second factual situation in which 'scheme, plan or system' evidence is admissible.  One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes."  *State v. Curry* (1975), 43 Ohio St.2d 66, 73, 330 N.E.2d 720.

{¶ 50} Where the other acts are chronologically and factually separate occurrences, they are generally not inextricably related to the acts alleged in the indictment.  See *State v. Eubank* (1979), 60 Ohio St.2d 183, 398 N.E.2d 567.  Here, the events that occurred in West Virginia and Tennessee happened several months to several years after the alleged events in Cuyahoga County.  Hence, they are not "inextricably related" to the crimes charged.  They were chronologically and factually separate events from the

alleged rape and sexual misconduct offenses in Ohio and were not part of the immediate background of the crimes charged. Further, it would have been possible to prove that Wright committed the crimes with S.P. in Cuyahoga County without necessitating the introduction of evidence regarding what happened in West Virginia and Tennessee. Accordingly, the other acts testimony was not admissible under the common scheme, plan, or system exception.

{¶ 51} Nor was it admissible to prove Wright's identity as the perpetrator. "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime. In that event[,] other act evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person, whoever he or she may be, committed both crimes." *State v. Smith* (1992), 84 Ohio App.3d 647, 666, 617 N.E.2d 1160, citing *Curry,* supra. "However, the identity of the perpetrator must be in dispute to permit use of other act evidence for this purpose." *Smith*, supra. Identity is not a material issue when the defendant admits to having been with the victim, but denies engaging in sexual conduct with the victim. *Curry*, supra at 73.

{¶ 52} Here, Wright, through counsel, admitted knowing S.P. but denied any sexual conduct with her. Wright's denial did not raise an identity question; it created a factual dispute regarding Wright's conduct with S.P. Id. Therefore, the other acts evidence was not properly admitted under the identity exception.

{¶ 53} This case is squarely on point with *State v. Thompson* (1981), 66 Ohio St.3d 496, 422 N.E.2d 855, in which the defendant was charged with gross sexual imposition involving his daughter when she was under 13 years of age. During trial, the victim testified that the defendant had fondled her breasts and pubic region prior to her thirteenth birthday. The State then elicited testimony concerning sexual incidents with the defendant that occurred subsequent to the victim's thirteenth birthday.

{¶ 54} The Supreme Court held that evidence of the defendant's subsequent sexual contact with his daughter after she turned 13 was improperly admitted as other acts evidence. The Court found that the defendant's subsequent acts had occurred anywhere from ten days to two years after the events alleged in the indictment and, hence, were "chronologically and factually separate occurrences" that were not "inextricably related" to the alleged acts. Further, the Court found that identity was not at issue in the case because the only contested issue at trial was the timing of the defendant's first sexual contact with his daughter.

Accordingly, the Court held that the testimony regarding the defendant's subsequent sexual activity had been improperly admitted. Id. at 498. Further, the Supreme Court concluded the error was not harmless because of "the real possibility that defendant was convicted of gross sexual imposition because of the improper admission of testimony that he committed sexual imposition herein subsequent to his daughter becoming 13 years of age." Id. at 499. The Court affirmed the appeals court's decision that had reversed the defendant's conviction and remanded the matter for a new trial.

{¶ 55} As in *Thompson*, we conclude that the improper admission of the other acts testimony cannot be considered harmless error in this case. Before an error can be considered harmless, we must be able to "'declare a belief that it was harmless beyond a reasonable doubt.'" *State v. Craig,* Cuyahoga App. No. 93137, 2010-Ohio-1857, ¶32, quoting *Chapman v. California* (1967), 386 U.S. 18, 24, 876 S.Ct. 824, 17 L.Ed.2d 705. "Where there is no reasonable possibility that the unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." Id., citing *State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

**{¶ 56}** Here, as in *Thompson*, there is a real possibility that Wright was convicted of raping[2] S.P. *before* her thirteenth birthday because of the improper admission of evidence regarding events that occurred *after* her birthday, including her sexual activity with Wright, her pregnancy, and the fact that he fathered her child. Further, like the victim in *Thompson*, who testified that she "had trouble remembering dates," S.P. was very imprecise about dates and times. Accordingly, we cannot conclude that the admission of the other acts testimony was harmless beyond a reasonable doubt.

**{¶ 57}** Furthermore, we note that even if the other acts evidence were properly admitted, the trial court's jury instructions did not give the jury the "limited purpose" instruction required by *Flonnory*, supra. "Where evidence has been admitted for a limited purpose which the State claims shows the defendant did certain 'other acts' which show the motive or intent of the accused, the absence of mistake or accident on his part, or the defendant's scheme, plan[,] or system in doing the act in question [that] is alleged in the indictment, the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment." Id. at 129. In this case, the "other acts" were purportedly admitted for the limited purposes of demonstrating Wright's

---

[2]We need not consider whether the improperly admitted evidence contributed to Wright's convictions for unlawful sexual conduct with a minor in light of our holding that the charges should

common scheme and identity, but no limited purpose instruction was given to the jury.

{¶ 58} Appellant's fourth assignment of error is sustained.[3] Wright's rape conviction is reversed and the matter is remanded for further proceedings.

## VI.  Wright's Pro Se Supplemental Assignments of Error

{¶ 59} This court granted Wright leave to file pro se supplemental assignments of error.

{¶ 60} In his first assignment, Wright claims that the verdict form with respect to his convictions for unlawful sexual conduct with a minor, third degree felonies, did not comply with R.C. 2945.75(A)(2), which states that "[w]hen the presence of one or more additional elements makes an offense one of more serious degree * * * the guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional

---

have been dismissed for insufficiency of the evidence.

[3]Wright also argues in this assignment of error that the trial court abused its discretion in allowing the taped phone calls between him and Jackson to be played for the jury. In the conversations, Wright suggests that Jackson and S.P. refuse to talk to the prosecutor and that S.P. should change her story about what happened. In another conversation, Wright and Jackson discuss being married upon resolution of the case. Because this evidence was relevant to Jackson's credibility, the trial court did not abuse its discretion in allowing the tapes to be played. Furthermore, although Wright now contends that the trial court should have admitted the tapes as an exhibit, the record reflects that the State moved for their admission and defense counsel objected. Under the invited error doctrine, a party cannot take advantage of an error he invited or induced. *State v. Seiber* (1990), 56 Ohio St.3d 4, 17, 564 N.E.2d 408.

element or elements are present." Wright made no objection to the verdict form in the trial court and, accordingly, has waived this error on appeal. In any event, this assignment of error is rendered moot by our conclusion that the trial court should have dismissed the unlawful sexual conduct with a minor charges because the evidence was insufficient to support them.

{¶ 61} In his second assignment of error, Wright claims that the trial court failed to comply with Crim.R. 44, which provides that "[w]here a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings * * * unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." Wright contends that the trial court erred because it appointed three lawyers for him, despite his "crystal-clear intent to proceed pro se and represent himself."

{¶ 62} The record reflects that although Wright filed numerous pro se motions, he never expressed an intent to waive his right to counsel. At the hearing regarding the first attorney's request to withdraw, Wright did not ask to represent himself and, in fact, he thanked the judge when he told Wright that he was appointing another lawyer to represent him. At the hearing regarding the withdrawal of Wright's second lawyer, Wright requested two specific attorneys to represent him. Further, Wright complained that he did

not have money to hire the lawyer of his choice and told the judge, "I have a right to counsel."  Wright's argument that he wanted to represent himself is obviously without merit; his second supplemental assignment of error is therefore overruled.

{¶ 63} In his third assignment of error, Wright claims that his conviction should be reversed because the verdict forms were not filed and made part of the record. Crim.R. 55 states that "the clerk shall chronologically note in the appearance docket all: process issued and returns, pleas and motions, papers filed in the action, orders, verdicts and judgments.  The notations shall be brief but shall show the date of filing and the substance of each order, verdict and judgment."

{¶ 64} Although the verdict forms were not filed, they are in the record. Further, the docket reflects that the verdict and Wright's conviction and sentence were properly journalized.  Accordingly, we find no reversible error. "The filing of such forms is a ministerial act and, however important, it does not affect a substantial right when the otherwise perfect record of the proceedings at trial and the final judgment fully disclose the delivery and acceptance without objection of valid verdicts by the jury." *State v. Clark* (Jan. 6, 1987), Montgomery App. No. CA 9722.  Wright's third supplemental assignment of error is overruled.

{¶ 65} In his fourth assignment of error, Wright contends that he was denied effective assistance of counsel. Specifically, Wright contends that the indictment specified that the rape occurred between May 1, 2008 and May 1, 2009, but S.P. testified at trial that Wright first had intercourse with her in April or May, 2002, before her thirteenth birthday. Wright contends that the State "certainly withheld that information" and, accordingly, counsel should have moved for a mistrial.

{¶ 66} Wright's argument is without merit. His assertion that the State purposely withheld information is not supported by the record. Further, any failure by the State to allege more specific dates could not have prejudiced Wright because his defense strategy was that he never engaged in sexual conduct with S.P., at any time or place. In the absence of prejudice, there was no basis for counsel to move for a mistrial. Wright's fourth assignment of error is therefore overruled.

{¶ 67} In his fifth assignment of error, Wright contends that the trial court erred in assessing court costs after the judge told him at sentencing that he would consider waiving those costs.

{¶ 68} R.C. 2947.23 states: "In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." Thus, imposition of court costs as part of a defendant's sentence in criminal

cases is mandatory absent a finding of indigency. *State v. Lockwood*, Cuyahoga App. No. 83165, 2004-Ohio-2349, ¶12. Court costs may be waived in the discretion of the court if the court first determines that the defendant is indigent. *State v. Masterson*, Cuyahoga App. No. 90505, 2008-Ohio-4704, ¶17. The court may only grant a waiver of court costs if the defendant makes a motion at the time of sentencing. Id.

{¶ 69} Despite Wright's argument, the record reflects that Wright asked the judge to consider waiving costs until after he was released from prison; he did not ask the judge to suspend the imposition of all costs because he was indigent. In the absence of a finding of indigency, the trial court properly imposed costs. Wright's fifth supplemental assignment of error is therefore overruled.

{¶ 70} Last, Wright contends that the trial court lacked jurisdiction because an affidavit charging the offense committed was not filed with the court, in violation of R.C. 2935.05. What Wright fails to appreciate is that he was charged under an indictment, which is a different charging instrument than a complaint. *State v. Hess*, Jefferson App. No. 02 JE 36, 2003-Ohio-6721, ¶16. The requirements of R.C. 2935.05 refer to the filing of criminal complaints, not to indictments, and hence are not applicable to this case. Wright's sixth assignment of error is therefore overruled.

**{¶ 71}** Wright's convictions for unlawful sexual conduct with a minor are vacated. The case is remanded to the trial court to enter a judgment entry vacating the convictions; his conviction for rape is reversed and the matter is remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, J., CONCUR