[Cite as *State v. Noernberg*, 2012-Ohio-2062.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   97126

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KYLE NOERNBERG

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546886

**BEFORE:**   Boyle, P.J., Sweeney, J., and Keough, J.

**RELEASED AND JOURNALIZED:**  May 10, 2012

**ATTORNEY FOR APPELLANT**

David L. Doughten
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, Ohio   44103


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Scott Zarzycki
Edward Brydle
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Kyle Noernberg, appeals his conviction for rape. In his sole assignment of error, he argues that the evidence presented against him was not sufficient to convict him of the charge. We agree and vacate his rape conviction. For the reasons set forth in this opinion, we also vacate Noernberg's convictions for sexual battery, gross sexual imposition, and unlawful sexual conduct with a minor, as well as his classification as a Tier III sex offender.

<u>Procedural History</u>

{¶2} Noernberg and two codefendants, Christopher Theodus and John Rivera,[1] were charged with 22 counts in February 2011: one count of kidnapping, six counts of rape, six counts of sexual battery, and nine counts of gross sexual imposition. Each count contained a sexually violent predator specification, and the kidnapping count also contained a sexual motivation specification. Noernberg entered a plea of not guilty, and the case was tried to a jury.

{¶3} After the state rested, the trial court dismissed the kidnapping count pursuant to Noernberg's Crim.R. 29 motion. The trial court also dismissed several other counts, finding them to be duplicative. The remaining seven counts were renumbered

---

[1] *See State v. Theodus*, 8th Dist. No. 97290, 2012-Ohio-____, and *State v. Rivera*, 8th Dist. No. 97091, 2012-Ohio-____.

and presented to the jury: Count 1, rape in violation of R.C. 2907.02(A)(2), Count 2, rape in violation of R.C. 2907.02(A)(1)(c), Count 3, sexual battery in violation of R.C. 2907.03(A)(1), Count 4, sexual battery in violation of R.C. 2907.03(A)(2), Counts 5 - 7, gross sexual imposition in violation of R.C. 2907.05(A)(1), (2), and (5). All counts still carried a sexually violent predator specification.

{¶4} The jury found Noernberg not guilty of rape under Count 1, but guilty of the lesser included offense of unlawful sexual conduct with a minor, without the sexually violent predator specification. The jury also found Noernberg guilty of rape, sexual battery, and gross sexual imposition under Counts 2, 4, and 7 (where the victim's mental or physical condition substantially impaired her ability to consent or resist), with the sexually violent predator specification. Noernberg was found not guilty of all other counts.

{¶5} Prior to sentencing, the state dismissed all of the sexually violent predator specifications. The trial court merged Counts 1, 4, and 7 into Count 2, and then sentenced Noernberg to five years on Count 2. The trial court further notified Noernberg that he would be labeled a Tier III sex offender and would be subject to five years of postrelease control upon his release from prison.

<u>Sufficiency of the Evidence — Rape (Substantial Impairment)</u>

{¶6} In his sole assignment of error, Noernberg argues that the state's evidence was not sufficient to convict him of rape.

**{¶7}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶8}** Noernberg was convicted of rape pursuant to R.C. 2907.02(A)(1)(c). This statute provides in pertinent part that "[n]o person shall engage in sexual conduct with another" when "the other person's ability to resist or consent is substantially impaired because of a mental or physical condition," and "the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition."

**{¶9}** Noernberg does not deny that sexual conduct occurred. Instead, he argues that the state failed to offer sufficient evidence either that the victim was substantially impaired or that he knew, or had reasonable cause to believe, that she was substantially impaired.

**{¶10}** In *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987), the Ohio Supreme Court held that because the phrase "substantially impaired" is not defined in the Ohio Criminal Code, it "must be given the meaning generally understood in common usage." The *Zeh* court also held that it is sufficient for the state to establish substantial impairment by offering evidence at trial establishing a reduction or decrease in the

victim's ability to act or think. *Id*. at 103-104. "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim." *State v. Brady*, 8th Dist. No. 87854, 2007-Ohio-1453, ¶ 78.

{¶11} In *In re King*, 8th Dist. Nos. 79830 and 79755, 2002-Ohio-2313, this court held that a person who engages in sexual conduct with another when that person's ability to resist or consent is substantially impaired by reason of voluntary intoxication is culpable for rape. *Id*. at ¶ 22, citing *State v. Martin*, 12th Dist. No. CA99-09-026, 2000 WL 1145465 (Aug. 12, 2000). But we made clear that not "all persons who engage in sexual conduct with a voluntarily intoxicated person are culpable under R.C. 2907.02(A)(1)." *Id*. A person's conduct becomes criminal under this section only when "the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication." *Id*.

{¶12} Furthermore, R.C. 2901.22(B) defines "knowledge" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶13} In *State v. Doss,* 8th Dist. No. 88443, 2008-Ohio-449, ¶ 18, we further explained the difficulty when reviewing substantial impairment due to voluntary intoxication:

> [T]here can be a fine, fuzzy, and subjective line between intoxication and impairment. Every alcohol consumption does not lead to a substantial

impairment.   Additionally, the waters become even murkier when reviewing whether a defendant knew, or should have known, that someone was impaired rather than merely intoxicated.   Of course, there are times when it would be apparent to all onlookers that an individual is substantially impaired, such as intoxication to the point of unconsciousness.   On the other hand, "a person who is experiencing [an alcohol induced] blackout may walk, talk, and fully perform ordinary functions without others being able to tell that he is 'blacked out.'"   Westin, Peter, *Egelhoff Again* (1999), 36 Am.Crim.L.Rev. 1203, 1231.

**{¶14}** With this law in mind, we turn to the facts of this case.

Analysis

**{¶15}** The alleged victim, Y.B., who was 15 at the time of the events, testified that in September 2010, she had been hanging out at Noernberg's home with Noernberg and the two codefendants, Christopher Theodus and John Rivera.   She had never met Noernberg before that day.   She said they smoked "a lot" of marijuana, and then they decided to buy some beer.   She said that they were drinking big cans of beer, "like as big as a water bottle is," and that she had "more than five."

**{¶16}** Y.B. stated that when they were all in Noernberg's room, she "started feeling dizzy."   She said that she was sitting on the edge of the bed when the three males "came towards" her, and "got into [her] face."   Y.B. said that Theodus and Rivera then left the room and she and Noernberg remained.   Y.B. testified that Noernberg "took off his pants and his shirt and came and laid next to [her] on the bed."   He was still wearing his boxers.   Y.B. then testified to the following regarding Noernberg.

> Q. And when he laid down next to you did he say anything?   Or what happened from there?

A. From there he asked me if I was going to take off my pants, and I said, no. And he kept asking me. And then he finally asked me why, and I said because I'm a virgin. And he said I could have sex with a virgin, we could use a condom, and I refused. Then he told me if I can give him a blow job, and I didn't want to. He kept pushing me to. And he told me if I don't, I would — I would have to leave. I did because I didn't want to leave. I had nowhere else to —

* * *

Q. And you said that you didn't want to do it or did not?

A. Did not.

Q. And what was the reason? How were you made to do that?

A. He told me that I'll have to leave if you don't.

Q. During this * * * act of oral sex, how were you feeling at the time?

A. I felt really sick to the point that I puked all over his penis.

Q. In the middle?

A. Yeah. And I got up and I went to the bathroom and I puked even more.

Q. And did that put an end — did this stop what was going on at that point?

A. Well, with him, yeah. Like he left the room, he went to clean up or — I don't know, whatever he went to do.

{¶17} Y.B. then testified to events that occurred with the two codefendants. She said that Theodus came in and asked her if she would take her pants off. She said no and asked him, "didn't [Noernberg] tell you?" Theodus replied, "tell me what?" Y.B. testified, "I knew [Noernberg] told him that * * * I was still a virgin, so I'm pretty sure he went to tell [Theodus] because I heard it. They were in the next room over." She

testified that Theodus then stood in front of her on the bed, and "kept pushing" her to give him a "blow job."   Y.B. testified that she did not want to do so but eventually gave in.

{¶18} Y.B. then testified that after that, all three males left the house.   At some point, she was alone in the Noernberg's house with "X," who was later identified to be Xavier Gordon.   Noernberg and Rivera came back to the house, but not Theodus. Later, she was lying on the floor with Rivera.   She said that she performed oral sex on him because he threatened her that if she did not do it, he would have Noernberg make her leave the house.   At some point after Rivera ejaculated, Y.B. got up off the floor with Rivera and slept in Noernberg's bed with him.

{¶19} The next day, Y.B. testified that when she woke up, she did not remember "much of what happened the night before."   She said it was not until later that day when she recalled the events.

{¶20} On cross-examination, the victim agreed that she did not black out on the night of the alleged events, nor did she lose consciousness.   She further agreed that although she was not sober, she knew what was happening.

{¶21} The state presented several other witnesses.   But the testimony of these witnesses is not significant to the question presented here — sufficiency of the state's evidence.

{¶22} The state did present the testimony of Xavier Gordon, who saw the victim and the three codefendants on the night in question.   Gordon testified that Rivera referred to Y.B. as a "DTF," which he explained meant "down to fuck."   Gordon

further explained that calling a female by that acronym came from the television show Jersey Shore. He said that it did not mean that a male had sex with a female; it meant "I like her." Significantly, however, Gordon did not testify to any facts regarding the level of Y.B.'s intoxication.

{¶23} Darrius Warrick also testified that he was not at Noernberg's house on the night in question, but he was there earlier in the day, when it was still light outside. He testified that when he was there, no one was drinking yet, but they might have been smoking pot. He left early with his girlfriend.

{¶24} After reviewing the record before us, we conclude that the state did not present sufficient evidence that would enable a trier of fact to find beyond a reasonable doubt that Y.B. was substantially impaired, or that Noernberg was aware, or should have been aware, that Y.B. was substantially impaired, rather than merely intoxicated.

{¶25} Although Y.B. testified that she consumed "more than five" large cans of beer and smoked "a lot" of marijuana, she was also able to fully recite the events in detail as they occurred that evening. According to her testimony, she was fully able to say "no" to intercourse, and give her reason as to why; she wanted to remain a virgin. She was also able to explain the reason she ultimately agreed to give oral sex to at least two of the males, i.e., she did not want them to kick her out of Noernberg's home.

{¶26} Y.B. was also able to fully describe the events that occurred after her encounter with Noernberg. She testified in detail as to what happened with Theodus and Rivera, as well as talking to Gordon that evening.

{¶27} Indeed, beyond the amount of alcohol and marijuana Y.B. had consumed, the state failed to present any evidence as to her substantial impairment. And although Noernberg knew that Y.B. had consumed the alcohol and drugs, there is no evidence to indicate that he should have known that her ability to resist or consent was substantially impaired by consuming them. There was no evidence of any particular aspects of Y.B.'s behavior that should have alerted Noernberg to her substantial impairment, such as stumbling, falling, slurred speech, passing out, or vomiting. Although Y.B. vomited on Noernberg's penis, that was after the act had begun.

{¶28} For example, in *State v. Harmath*, 3d Dist. No. 13-06-20, 2007-Ohio-2993, ¶ 14, the defendant was aware that the victim had consumed a large amount of alcohol; she was described as being "drunk" and "very intoxicated." The defendant saw the victim stumbling and falling down, and he saw her vomit twice before "passing out." Based on these facts, the court of appeals concluded that the trial court did not err in denying the defendant's Crim.R. 29 motion for acquittal. *See also State v. Eberth*, 7th Dist. No. 07-MA-196, 2008-Ohio-6596 (defendant's carrying unconscious victim from bar, whom he was aware had passed out after ingesting a large amount of alcohol and cocaine, is evidence that he knew, or should have known, of her substantial impairment); *State v. Williams*, 9th Dist. No. 02CA008112, 2003-Ohio-4639 (defendant's awareness that victim passed out after ingesting a substantial amount of alcohol is evidence that he knew, or should have known, that the victim was substantially impaired).

**{¶29}** Thus, the evidence presented in this case was not sufficient for a trier of fact to conclude beyond a reasonable doubt that Y.B. was substantially impaired, or that Noernberg was aware or should have been aware that her ability to resist or consent was substantially impaired.

**{¶30}** Noernberg's sole assignment of error is sustained.

**{¶31}** Noernberg was also convicted of sexual battery under R.C. 2907.03(A)(2) which prohibits a person from engaging in sexual conduct with another when "the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired," and gross sexual imposition under R.C. 2907.05(A)(5), which provides that no person shall have sexual conduct with another when "the ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition."    Because the state must prove the same elements for these offenses — substantial impairment of the victim and the defendant's knowledge of it — we also vacate these convictions even though Noernberg does not raise sufficiency with respect to these convictions.    This court may recognize plain error sua sponte to prevent a miscarriage of justice.    *State v. Malone*, 3d Dist. No. 9-06-43, 2007-Ohio-5484, ¶ 33, citing *State v. Conklin*, 2d Dist. No. 1556, 2002-Ohio-2156; Crim.R. 52(B).

**{¶32}** Additionally, to prevent a miscarriage of justice, we sua sponte recognize plain error with respect to Noernberg's conviction for unlawful sexual conduct with a minor as well, because the state failed to present sufficient evidence to prove this offense beyond a reasonable doubt.

**{¶33}** R.C. 2907.04, prohibiting unlawful sexual conduct with a minor, states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." The age of the offender is an essential element of the offense and must be proven by the state beyond a reasonable doubt. *State v. Wright*, 8th Dist. No. 93068, 2011-Ohio-3575, ¶ 26, citing *State v. Price*, 80 Ohio App.3d 35, 608 N.E.2d 818 (3d Dist.1992). Age may be proved by circumstantial evidence, but the jury's observations of the defendant alone are not sufficient. *Id.*

**{¶34}** Here, the state did not present evidence of Noernberg's age at trial. Y.B. testified that Rivera, Theodus, and Noernberg went to Giant Eagle to purchase alcohol on the night in question. But that testimony does not demonstrate beyond a reasonable doubt that Noernberg was 18 years of age or older. Because there was no other evidence relating to Noernberg's age, any conclusions the jury made about his age based solely on their observations of him at trial are insufficient to establish this element of the offense.

**{¶35}** Further, the trial court improperly instructed the jury regarding this offense. The court instructed that "[u]nlawful sexual conduct with a minor is having sexual

conduct with another who was not his spouse and the defendant knew that she was 13 years old, 13 years of age or older, but less than 16 years of age, or the defendant was reckless in this regard." The trial court gave no instruction that the jury was required to find that Rivera was 18 years of age or older as an element of this offense.

{¶36} Accordingly, we sua sponte vacate Noernberg's conviction for unlawful sexual conduct with a minor.

{¶37} Judgment reversed. Noernberg's convictions for rape, sexual battery, gross sexual imposition, and unlawful sexual conduct with a minor are vacated. Noernberg's Tier III sex offender classification is also vacated. Case remanded for trial court to issue a judgment entry consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

___
MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KATHLEEN A. KEOUGH, J., CONCUR